## NOONAN VS. ORTON.

SLANDER: LIBEL. (1) *Rule as to slander of partners.* (2) *Counts in slander and libel may be joined.* (3) *Charge of arson.* (4) *Charge of perjury.* (5–7) *Conditionally privileged communications.* (5) *Malice, when to be charged.*

1. Where language spoken or written concerning partners in their partnership business is actionable *per se*, either partner may sue separately for the injury snstained by him.

2. A count in libel may be joined with one in slander.

3. The complaint shows that a paper mill belonging to plaintiff and his copartner was totally destroyed by fire July 6, 1869; that defendant's flouring mill, about eighty feet northward thereof, was destroyed by fire at the same time, and in consequence of the burning of said paper mill; that plaintiff, in his sworn proofs of loss, stated the value of the paper mill at $20,000, and that it was destroyed without fault on the part of the owners; that on the 4th of July the wind did not, but on the 6th did, blow from the south northwardly; that the defendant and the agent of the insurers both knew the above facts; and that defendant stated to said agent that plaintiff and his copartner had no just claim on the insurers — that the property destroyed was not worth $1,300.— that a part of the machinery had been removed long before the fire — and that " the design was to burn the property on the 4th of July, but, owing to the wind blowing from the wrong direction, it was postponed until July 6th." *Held*, that these words were sufficient to sustain an *innuendo* that defendant meant thereby to charge plaintiff with being guilty of *arson*.

4. The complaint further shows that defendant wrote to the president of a company in which said paper mill was insured, stating, in reference to said loss: " The proofs are all a *lie*. The loss was small, not to exceed twelve to fourteen hundred dollars. The machinery was all taken out of the mill before the fire, and the highest estimate I have heard on the old building is six hundred dollars. Here is a great crime committed, which ought to be punished." *Held*, (there being a proper innuendo to that effect), that these words charge plaintiff with *perjury*.

5. Words actionable *per se*, if spoken or written to one who is interested in knowing and has a right to know and act upon the facts thus communicated, are *conditionally privileged*; and to give a right of action thereon, *malice* must be shown.

Noonan vs. Orton.

6. Thus, a communication made by defendant to the agent or president of an insurance company in which plaintiff's property was insured at the time of its destruction by fire, charging plaintiff with arson in setting fire thereto, and with perjury in making his proofs of loss, is *held* conditionally privileged.

7. In slander or libel for such a communication, the complaint must allege that defendant, when he made the same, knew it to be false, or must in some other form charge him with *malice* in making it.

APPEAL from the County Court of *Milwaukee* County.

*Noonan* brought his action against *Orton* for slander, the complaint also containing a count in libel.   The first count of the complaint, in slander, alleged, in substance, that *Noonan* and one McNab were the owners of a certain paper mill, which was destroyed by fire on the 6th of July, 1869, the mill being insured at the time of the fire in favor of said owners, to the amount of $14,500 ; that proofs of loss were sworn to by *Noonan* and McNab severally, stating that the fire occurred without fault of either of them, and that the property destroyed was worth about $20,000 ; that said proofs of loss were satisfactory to the companies ; that a flouring mill, which the defendant was or pretended to be the owner of, or interested in, situate about eighty feet north of said paper mill, was wholly consumed by fire at the time and in consequence of the burning of the latter ; that on the 4th of July, 1869, the wind did not, but on the 6th did, blow from the south northwardly ; that defendant and the agent of the companies which had insured said paper mill knew the aforesaid facts ; that defendant, designing to injure plaintiff and his firm, and for the purpose of inducing said agent to believe that the said Noonan & McNab, especially the plaintiff, had caused the fire for the purpose of defrauding the insurers, and also for the purpose of burning defendant's flouring mill, and in order to induce said agent to believe that plaintiff had sworn falsely in his proofs of loss and to prevent the insurers from paying the loss, in conversation with said agent made the following charges

against plaintiff as a member of said firm of Noonan & McNab: "Noonan & McNab have no just claim on you; the property destroyed was not worth thirteen hundred dollars; a part of said machinery had been removed a long time since; and if you pay the claim you permit *Noonan* to perpetrate a perfect swindle on your insurance companies. If you will call for an investigation, I will furnish you with proofs of the statement I make. The design was to burn the property on the fourth day of July; but, owing to the wind blowing from the wrong direction, it was postponed till July 6th." It is further alleged that the meaning of the foregoing words was, that plaintiff had caused the paper mill to be fired for the purpose of burning defendant's flouring mill, and to defraud the insurers, and that plaintiff had thereby been guilty of the crime of arson; by reason of which slanderous words plaintiff had been damaged in the sum of $20.000.

The second count, that in libel, alleged that at the time of the burning of said paper mill, Noonan & McNab held a policy of insurance on the mill in the Lorillard Insurance Company of New York, for the sum of $500, and that the defendant, for the purpose of injuring plaintiff, addressed the following letter to the president of said company:

"(PRIVATE.)

"MILWAUKEE, August 7, 1869.[e]

"CARLILE NORWOOD, *President Lorillard Ins. Co., N. Y.* Dear Sir: Your fav. of 14th of July, rel. to you risk, is red. Yr. agent, Mr. Cary, has not conferred with me, but on the contrary betrayed me to *Noonan*, the insured, and informed of my letter to you; is opposed to any investigation, and would prefer to pay the risk, as the particular friend of *Noonan*. The risk by your Co. is garnished. The agents here are all ashamed of the risk. The proofs in are all a *lie.* The loss was small, not to exceed 12 to 1,400. The machinery was all taken out of the mill before the fire, and the highest estimate I have heard on the old building is $600. Here is a great crime committed, which

Noonan vs. Orton.

ought to be punished. I desire you will not inform yr agent here of my communication to you. Yr ob st. J. J. ORTON."

"P. S.—I have no doubt that the policies are all void for many reasons; and I have abundant proof of the removing of all valuable machinery before the fire was set. I shall be glad to co-operate with yr Co. in ferreting out this crime and void-ing yr policy.      Yr,                    J. J. ORTON."

There was a proper colloquium and innuendo to show that these words charged plaintiff with perjury and arson; and it was alleged that said words and publication were false, to the damage of plaintiff twenty thousand dollars.

Defendant demurred to the complaint on the ground: (1.) That there was a defect of parties plaintiff. (2.) That several causes of action were improperly united. (3.) That the com-plaint does not state a cause of action. The demurrer was overruled, and defendant appealed.

*J. J. Orton*, appellant, *pro se*, argued that, the ownership of the paper mill being in the firm of Noonan & McNab, and the complaint alleging the existence of said firm, the firm interest in the policies, and that defendant caused it to be believed that plaintiff and McNab had caused the fire, the whole was clearly a partnership matter. McNab, who was equally charged with the wrong, should therefore have been joined as a plaintiff. No malice is averred, and no statement of damage given, except damage to the firm. Townshend on Slander, § 303; *Cooke v Batchelor*, 3 B. & P., 150; *Maitland v. Goldney*, 2 East, 426; *Forster v. Lawson*, 3 Bing., 452. More-over the communication complained of appears on the face of the complaint to be a confidential and privileged communica-tion by a person directly interested in the subject matter. The complaint shows that defendant had lost a valuable flour mill by the fire, and also that Hibbard and his insurance companies had a mutual interest in finding out the origin of the fire, which brings the conversation within the rule of privilege. Malice is not alleged, and no malice can be fairly inferred in

the statement to Hibbard. Townshend on Slander, 50, 64, 208–210, 401–403. The facts being uncontroverted, the court is to determine the privileged character of the publication or conversation. Townshend on Slander, 288; 5 Sandf., 54, 72. If the communication is privileged, express malice must be averred. 5 Sandf., 54, 64.

*Palmer, Hooker & Pitkin*, for respondent, insisted that there was no defect of parties plaintiff. Actionable language concerning a partnership business constitutes a joint and several injury, for which both parties may sue jointly, or either may sue separately. Townshend on Slander, § 185; 1 Starkie on Slander, 347–49: *Odiorne v. Bacon*, 6 Cush., 185; *Ryckman v. Delavan*, 25 Wend., 186, 203; *Cook v. Hill*, 3 Sandford, 341. The two causes of action set forth in the complaint were properly united. Townshend on Slander, § 347 and cases cited; 1 Starkie on Slander, 356. The communications of the defendant were not privileged. Being made for the purpose, as alleged in the complaint, of injuring plaintiff and his firm, they cannot be considered privileged, even if of such a character that they might be held so if made in good faith. Townshend on Slander, § 209.

DIXON, C. J. Where the language spoken or written concerning partners in their partnership business is actionable *per se*, either partner may sue separately to recover damages for the injury sustained by him. The authorities in some instances go even much farther than this in upholding the right of separate action, but so far, at least, we think there can be no doubt. Townshend on Slander and Libel, § 185.

The first count of the complaint charges the speaking of words which, if spoken without excuse or justification, are actionable *per se;* and the second count charges the writing of similar words. The insinuation of the words in the first count alleged to have been spoken, was, that the plaintiff had committed the crime of arson. Such is the innuendo of the pleader, and we think it is sustained by the words charged.

The publication set out in the second count, and alleged to have been made by the defendant, clearly insinuated that the plaintiff had perpetrated the crime of perjury, and such is the innuendo of the pleader.

The joinder of a count in libel with one in slander is clearly proper.

But it is objected that the language complained of in each count was, as appears from the averments of the complaint, in the nature of a privileged communication, and that it is not alleged that the same was *maliciously* spoken or written. The words complained of as slanderous were spoken to an agent of the insurance companies whose policies covered the property destroyed by the fire, and which agent was interested in the question of such destruction and in knowing how the fire originated, and especially if it was caused or procured by the willful or criminal misconduct of the plaintiff. The publication charged as false and libelous was a communication in writing addressed and made to the president of one of the same insurance companies, who was in like manner interested in knowing the truth or falsity of the proofs of loss which had been made by the oaths or affidavits of the plaintiff and of his copartner, McNab.

The communications thus made were privileged, or of the kind more properly denominated conditionally privileged. An absolutely privileged communication is one in respect of which, by reason of the occasion upon which it is made, no remedy can be had in a civil action of slander or libel. Townshend, § 209. Of such are the words spoken or written by judges in the exercise of their judicial functions, by legislators in the performance of their duties, and many others. "A conditionally privileged publication is a publication made on an occasion which furnishes a *prima facie* legal excuse for the making of it; and which is privileged unless some additional fact is shown, which so alters the occasion as to prevent its furnishing a legal excuse. The additional fact which in the majority of cases is

required to be shown to destroy this conditional privilege, is malice, meaning bad intent, in the publisher, *i. e.*, an intent to injure the person whom or whose affairs the language concerns; and therefore by a conditionally privileged publication is very generally understood one which rebuts the presumption of malice, meaning absence of legal excuse, which, in cases where no legal excuse is apparent, arises from the mere fact of publication." Townshend, *supra.*

Communications are of the latter kind when they are made in good faith to those having an interest in them and a right to know and act upon the facts stated. "Where words imputing misconduct to another are spoken by one having a duty to perform, and the words are spoken in good faith and in the belief that it comes within the discharge of that duty, or where they are spoken in good faith *to those who have an interest in the communication* and a right to know and act upon *the facts stated,* no presumption of malice arises from the speaking of the words, and therefore no action can be maintained in such cases, without proof of express malice." Such is the language of SHAW, C. J., in *Bradley v. Heath,* 12 Pick., 164, and which no doubt correctly enunciates the principles of law governing this subject. See also Townshend, § 241, and authorities there cited.

The first count of the complaint charges that the paper mill, with all the machinery and fixtures, was "totally consumed by fire" on the 6th day of July, 1869. The second count refers to the first, and alleges that the "property was consumed by fire as hereinbefore stated." It is not averred in either count that the burning was *accidental,* or that it occurred without fault on the part of the plaintiff or of his copartner, McNab. The first count charges that the defendant, "well knowing the premises, and designing and intending to injure, " etc., "did speak," etc. In the second count the averment is, "of all which facts the said defendant had due notice and knowledge at the time of the composing and publication of the libelous words and matter hereinafter stated." Had the complaint dis-

Noonan vs. Orton.

tinctly averred the destruction by fire to have been accidental, then the averrments of knowledge on the part of the defendant of all the facts, including that one, at the time he spoke the words alleged to have been " false, scandalous and defamatory," and when he made the publication alleged to have been "false," might have been regarded very probably as sufficient averrments of malice. The making of a false accusation, knowing it to be false, could hardly be regarded as otherwise than malicious. But the making of a false accusation not knowing it to be such, but in good faith, supposing or believing it to be true, may, under some circumstances, be both innocent and commendable. It is so when made in the honest endeavor to perform one's duty, or when the communication is to one interested in it, and who has a right to act upon the information given.

It has been said that the law respects communications made in confidence, notwithstanding they may be false and erroneous and prove injurious to the party, and that this rule applies equally to words written and spoken. It is meant to protect the communications of business, and the necessary confidence of man in man. *Wyatt v. Gore*, 1 Holt's Nisi Prius Cases, 299, note (3 E. C. L., 114). In such cases the presumption of malice is rebutted by reason of the occasion upon which the words were spoken or written, even though the same may appear to have been false, unless they were so to the knowledge of the speaker or writer. The occasion operates to justify or excuse until such knowledge or bad faith or malice be shown, the burden of which rests upon the plaintiff. The general language of the authorities is, that the plaintiff must aver and prove malice, and the pleading here is defective in not containing that or any other equivalent averment.

*By the Court.* — Order reversed, and cause remanded for further proceedings according to law.