LEONARD H. NORD v. CHARLES L. GRAY.[1]

June 4, 1900.

Nos. 12,061—(149).

| 80 | 143 |
|----|----|
| 81 | 475 |
| 80 | 143 |
| 83 | 443 |

### Slander—Conspiracy to Defraud.

Certain words spoken of plaintiff considered, and *held* to impute criminal misconduct against him. Although no specific crime was, in words, directly charged, yet the effect of the utterance of the alleged slander was such that ordinary men would understand the language as imputing an unlawful conspiracy to defraud.

### Same—Privilege.

When the question of privilege in speaking words affecting another is claimed, there must be an obligation of duty to speak the words, as well as the good faith of the party uttering the same. The question of privilege is usually, and in this case was clearly, for the jury, and could not have been determined by the court.

Action in the district court for Hennepin county to recover $15,000 damages for slander. The case was tried before Pond, J., who directed a verdict in favor of defendant. From an order denying a motion for a new trial, plaintiff appealed. Reversed.

*M. L. Fosseen* and *Geo. D. Emery*, for appellant.

*Flannery & Cooke*, for respondent.

[1] Reported in 82 N. W. 1082.

LOVELY, J.

Action for slander, tried to a court and jury. At the close of the evidence, upon defendant's motion, the court directed a verdict in his favor. The complaint, in substance, alleges that plaintiff had been a trusted employee of the S. E. Olson Company of Minneapolis, and had charge of the dairy department of that concern; that he had bought dairy products from the Willmar Creamery Company, and had fixed the prices paid therefor; that, after the termination of his connection with the Olson Company, the defendant, who was superintendent of such company, directed and applied the following language to the plaintiff, in the presence of a third party:

"I know that you have received from the Willmar Creamery Company five per cent. of these bills [referring to bills of such company which he held in his hands], after our house had paid them, and we want the money."

The contention of plaintiff is that the words alleged as spoken, in connection with the time and place and circumstances set forth, imputed to the plaintiff a dishonest arrangement between such plaintiff and the Willmar Creamery Company to defraud the S. E. Olson Company, and that such words were so understood, and thereby imputed a criminal charge, either of embezzlement or conspiracy to defraud, and were actionable per se. The court below, in directing a verdict, did so upon the ground that the words in question were not actionable; that of themselves they did not charge that any offense had been committed by plaintiff.

When the case came into this court, it was urged with considerable earnestness by defendant's counsel that the relation which existed between defendant and plaintiff created a duty on the part of the defendant to make the statement referred to and it was made in good faith and without malice, and for that reason under privilege. We are not able to agree with the court below as to the import of the alleged slander, nor with the learned counsel that the utterance of such words was privileged. To adopt the language of this court in a former case:

It is true that the words used do not charge any crime in exact terms, but "the principle of common sense, which now governs in the construction of words in such actions, is that courts will un-

derstand them as other people would. The question always is, how would ordinary men naturally understand the language? * * * The question is whether, in the ordinary acceptation of the language, a person could reasonably doubt its signification. * * * They are actionable if they consist of a statement of facts which would naturally and presumably be understood by the hearers as a charge of crime." Stroebel v. Whitney, 31 Minn. 384, 387, 18 N. W. 98.

And, from the circumstances introducing or explaining the application of the words spoken, it may be inferred, from local conditions or surroundings duly set forth, that the words spoken were intended to charge a criminal act. Richmond v. Post, 69 Minn. 457, 72 N. W. 704. It very clearly appears, and must have been understood by those who heard these words spoken, that the plaintiff, who had been a trusted employee of the Olson Company, had entered into an unlawful combination with the Willmar Creamery Company to purchase goods of that institution, and to have, as a secret consideration therefor, against the interest of his employer, a dividend (or what, in common parlance, is called a "rake-off") of five per cent.,—pointed and emphasized as such words were by the demand for the return of the money, with the production of the bills of the creamery. That such an arrangement would be an unlawful and criminal conspiracy, subjecting the person guilty to prosecution and punishment, cannot be doubted (G. S. 1894, § 6423, subds. 4 and 6); and by this sufficient test it must be held that the words were actionable, and that plaintiff was entitled to have his case submitted to a jury, who had the right to infer from the speaking of the objectionable words the malice of the speaker, and award a verdict without proof of special damages.

The defendant, who was general manager of the S. E. Olson Company, in which plaintiff had charge of the dairy department, after the latter had left its employ requested the plaintiff to call at his place of business, and while there, in presence of others, and in a somewhat excited manner, repeated the objectionable words quoted above, and demanded the return of the money which it was claimed the plaintiff had wrongfully retained, and which should by rights be paid to his employer. Defendant's counsel urge that the statements there made by him were privileged, because uttered in

the discharge of his duty, for the protection of his own or his employer's interest in the matter involved; that they were relevant and proper in such connection, were uttered in good faith, and in the belief that they were true. Quinn v. Scott, 22 Minn. 456. It is sufficient to say in answer to this position that the question of privilege, involving, as it did, issues of fact, was a matter for the determination of a jury, upon the whole evidence in the case, which was clearly of such a character that no conclusion in favor of defendant by the trial court would have been justified, as a matter of law.

We hold that the learned trial court erred in directing a verdict for the defendant, under the circumstances; and the order denying plaintiff's motion for a new trial is reversed, and the case remanded for further proceedings.