CHARLES A. QUIST v. JOSEPH L. KIICHLI.[1]

May 13, 1904.

Nos. 13,837—(96).

**Slander.**

In an action for slander the complaint contained the following allegations: "That on the 6th day of October, A. D. 1903, at Minneapolis, Minnesota, the defendant, in a certain discourse which he then and there had with one Michael Breslauer, in the presence and hearing of said Breslauer and others, falsely and maliciously spoke and published of and concerning the plaintiff the false, malicious, and defamatory words following to wit: 'Quist came to my office, shut the door, and came down with his hand, and said: "I have got the boys (meaning thereby certain persons, some of whom had been, and some of whom were at said time, mem-

[1] Reported in 99 N. W. 642.

bers of the city council of the city of Minneapolis), and I want you to get me five thousand dollars ($5,000). You can get it from Cal. Goodrich and the Electric Light Company. I must have it, or I will fix them (said persons meaning)."' And plaintiff alleges that in and by said false, malicious, and defamatory words defendant intended thereby to charge, and was understood to charge, this plaintiff with the crime of asking this defendant for a bribe of five thousand dollars, with the understanding that, unless said sum of five thousand dollars was procured by defendant and paid over to plaintiff, he (plaintiff) would, as foreman of said grand jury, use his efforts to induce said grand jury to return indictments against said persons." Closing, the complaint alleges that the words spoken were false and defamatory, and prays for damages. *Held*, the complaint states a cause of action.

Action in the district court for Hennepin county to recover $10,000 for slander. From an order, Harrison, J., sustaining a demurrer to the complaint, plaintiff appealed. Reversed.

*James A. Peterson, A. D. Smith,* and *James E. O'Brien,* for appellant.

*W. E. Dodge* and *V. W. Dodge,* for respondent.

LEWIS, J.

The complaint, in substance, alleges that during a term of the district court beginning September 14, 1903, appellant was the duly appointed and acting foreman of the grand jury, who were conducting an investigation of the official conduct of certain members of the city council of Minneapolis for the purpose of determining whether any of them had been guilty of receiving bribes, and that a short time prior to the investigation respondent had been president of the council. The complaint then proceeds as follows:

That on the 6th day of October, A. D. 1903, at Minneapolis, Minnesota, the defendant, in a certain discourse which he then and there had with one Michael Breslauer, in the presence and hearing of said Breslauer and others, falsely and maliciously spoke and published of and concerning the plaintiff the false, malicious, and defamatory words following, to wit: "Quist (this plaintiff meaning) came to my office, shut the door, and came down with his hand and said: I (plaintiff meaning) have got the boys (meaning thereby certain persons, some of whom had been, and some of whom were at said time, members of the

92 M.—11

city council of the city of Minneapolis), and I (meaning plaintiff) want you (the defendant meaning) to get me (the plaintiff meaning) five thousand dollars ($5,000). You (defendant meaning) can get it from Cal. Goodrich and the Electric Light Company. I (plaintiff meaning) must have it, or I (plaintiff meaning) will fix them (said persons meaning).' " And plaintiff alleges that in and by said false, malicious, and defamatory words defendant intended thereby to charge, and was understood to charge, this plaintiff with the crime of asking this defendant for a bribe of five thousand dollars ($5,000), with the understanding that, unless said sum of five thousand dollars was procured by defendant and paid over to plaintiff, he (plaintiff) would, as foreman of said grand jury, use his efforts to induce said grand jury to return indictments against said persons.

The complaint closes with the allegation that the words spoken were false and defamatory, and with a prayer for damages. A demurrer was interposed upon the ground that the complaint does not state facts sufficient to constitute a cause of action, and was sustained.

The rule in this state with reference to the construction of words in this class of actions is that the courts will understand them just as other people do, and the question is, how would ordinary men naturally interpret the language used? Can a person reasonably doubt its significance? It is not necessary that the words make a charge in express terms, for they are actionable if they consist of a statement of facts which would naturally and presumably be understood by the hearers as a charge of crime. Stroebel v. Whitney, 31 Minn. 384, 18 N. W. 98; Reitan v. Goebel, 33 Minn. 151, 22 N. W. 291; Nord v. Gray, 80 Minn. 143, 82 N. W. 1082; State v. Shippman, 83 Minn. 441, 86 N. W. 431; Davis v. Hamilton, 85 Minn. 209, 88 N. W. 744; Herringer v. Inberg, 91 Minn. 71, 97 N. W. 460.

The language charged as slanderous, standing by itself, was:

Quist came to my office, shut the door, and came down with his hand, and said: "I have got the boys, * * * and I want you to get me five thousand dollars. You can get it from Cal. Goodrich and the Electric Light Company. I must have it, or I will fix them."

Granting that, in the absence of any reference to the capacity in which Quist was acting, and the fact that an investigation of council members was proceeding, the use of this language would not imply any definite charge, criminal or otherwise, against Quist, yet, when considered in connection with those allegations set forth in the complaint, only one reasonable and natural construction can be given these words, viz., that unless Quist was paid $5,000, the investigation of the city officials by the grand jury, of which he was foreman, would go on, so far as his influence was concerned, but, if the money was paid, it would come to an end.

The purpose of an innuendo is to set forth by necessary averments extrinsic facts, or to explain the meaning of doubtful words, but such averments are not useful or controlling where the meaning of the language is plain, and the explanation of the words immaterial and unnecessary. State v. Shippman, supra. "From the circumstances introducing or explaining the application of the words spoken, it may be inferred, from local conditions or surroundings duly set forth, that the words spoken were intended to charge a criminal act." Nord v. Gray, supra. Therefore it was necessary to allege by way of explanation the position Quist occupied in the grand jury, and the fact that it was engaged in investigating the official conduct of certain city officers. If defendant, when making the declaration attributed to him, did not know the capacity in which Quist was acting, nor that the grand jury were proceeding with such an investigation, possibly such facts might be taken advantage of by way of defense in mitigation of damages; but they did not constitute essential ingredients to the charge of slander. It is immaterial what meaning defendant intended to convey. The language must speak for itself in the light of the circumstances. The speaker may have intended no harm, or he may have been ignorant of the full import of his words, yet he cannot escape responsibility if he set afloat a false declaration which might convey the impression to those knowing the relation of Quist and the grand jury to the investigation that a bribe had been solicited. Newell, S. & L. (2d Ed.) 301; Gribble v. Pioneer-Press Co., 37 Minn. 277, 34 N. W. 30.

Order reversed.