Anna W. Sheibley, Appellant, v. Charles S. Ashton, Appellee.

**Libel:** WHEN ACTIONABLE PER SE: BURDEN OF PROOF. Every publication coming within the statutory definition of libel is actionable *per se,* and the law presumes its falsity, that its publication was malicious and that damage followed, and the burden is upon the defendant to overcome the presumption; but where the libel is not actionable *per se* the burden is upon plaintiff to allege and prove special damage.

**Libel per se:** HOW DETERMINED. Ordinarily the question of whether a publication is libelous *per se* is for the court.

**Same.** The question of whether a publication is libelous *per se* depends upon the meaning to be given the language as a whole, and if the reasonable import of the publication is not such as to work defamation of the reputation of another, it is not libelous *per se* and cannot be aided by innuendo; but to render the same actionable matter of inducement and colloquium must be pleaded, or special damage must be proven.

**Libelous Publication.** An affidavit published by defendant charging that plaintiff, a Notary Public, had induced affiant to make a false affidavit containing a libel against a third person, which affiant signed without knowledge of its contents or the falsity of its statements, charged plaintiff with inducing affiant to libel another and was libel *per se.*

**Depositions:** WAIVER OF OBJECTIONS. A party who, without objections, participates in the taking of the depositions, waives the objection, when the same are offered upon trial, that they were taken outside the state without the issuance of a commission.

*Appeal from Woodbury District Court.*— Hon. F. R. Gaynor, Judge.

Monday, March 12, 1906.

Action to recover damages for a libel. At the time in question both parties to the action resided in Ponca, Dixon county, Neb. The defendant was the publisher of a newspaper of general circulation at said place, and in October,

1902, he published in such newspaper the following matter:

Affidavit.

Published by Request of A. C. Drager.

State of Nebraska, Dixon County — ss.:

I, Mathilda Drager, wife of August C. Drager, of Ponca, Dixon county, Nebraska, being first duly sworn, depose and say that a certain affidavit by me made on or about the 1st day of May, 1902, alleging that one J. J. McCarthy had on the evening of November 3d, 1901, behaved himself improperly and in a manner unbecoming a gentleman, was procured from me upon the sole representations of one A. W. Sheibley at her urgent solicitation and request, and that the same was by me executed without any knowledge of its contents and being at the time entirely ignorant of its import; that, being now informed of its contents, purposes, and effects, and being aware of the absolute falsity thereof, I hereby revoke the same, and deny each and every allegation therein contained. I further swear that this affidavit is my voluntary act and is made upon my own motion.

Mathilda Drager.

Subscribed in my presence and sworn to before me this 8th day of September, 1902.

[Seal.]          W. W. Cooper, Notary Public.

By way of innuendo, plaintiff alleges that she was a notary public in and for Dixon county; that by such publication it was intended to accuse her, and she was thereby accused, of having procured to be made and sworn to before her as such notary public an affidavit the statements whereof were known by her to be false and untrue; that by such publication it was caused to be believed of her that she had been guilty of subornation of perjury; that thereby it was caused to be believed of her that she had been guilty of slander and of traducing the character of the person, J. J. McCarthy, named therein. All of which matters plaintiff says were false in fact, and that said publication was malicious and defamatory; and she says she has been injured thereby in her good name and reputation, and damaged in the general sum for which she asks judgment. The answer of the defendant admits the publication as charged; denies

malice; pleads the truth of the statements as made in the affidavit; and specifically denies that by the publication he intended to charge plaintiff with subornation of perjury, or with slandering or traducing any person, particularly J. J. McCarthy. All other allegations of the petition are met by a general denial. Trial was had to a jury resulting in a verdict and judgment for defendant. Plaintiff appeals.— *Reversed.*

*Geo. W. Argo, R. E. Evans,* and *W. E. Gantt,* for appellant.

*C. A. Irwin, J. V. Pearson,* and *W. D. McCarthy,* for appellee.

BISHOP, J.— The cause of action, it will be observed, arose wholly in the state of Nebraska, and we premise by saying that, in the absence of any showing to the contrary, we shall assume that the law of that state upon the subject of libels is identical with the law of this state. A criminal libel is defined by statute as " the malicious defamation of a person, made public by any printing . . . tending to provoke him to wrath or expose him to public hatred, contempt or ridicule, or to deprive him of the benefits of public confidence and social intercourse." Code, section 5086. This definition has been held applicable to civil actions to recover damages as for a libel. *Stewart v. Pierce,* 93 Iowa, 136. And every publication which comes within the statutory definition of libel is declared to be actionable *per se;* that is, upon proof of the publication, the law will presume the falsity of the matter charged, that the publication was with malice, and that some damage followed. And the burden is upon the defendant to overcome such presumption. *Call v. Larabee,* 60 Iowa, 212; *Halley v. Gregg,* 74 Iowa, 563. If the publication is not such in character as to be actionable *per se,* the burden of proof remains with the plaintiff in all respects,

1. LIBEL: when actionable *per se*: burden of proof.

and a recovery can be had only upon allegation and proof of special damage. *Achorn v. Piper,* 66 Iowa, 694.

Where the situation is not controlled by matters of inducement or colloquium pleaded, the question whether a publication relied upon as libelous comes within the statutory definition, and hence is to be taken as actionable *per se,*

2. LIBEL *per se:* how determined.

is always a question for the court. 18 Am. & Eng. Ency., 990. Our cases fully recognize the doctrine as thus stated. In addition to those already cited, see *Hollenbeck v. Hall,* 103 Iowa, 214; *Mosnat v. Snyder,* 105 Iowa, 500; *Wallace v. Homestead Co.,* 117 Iowa, 348. And in the case last cited it is said that, if the publication is not libelous *per se* upon its face, it cannot be made so by innuendo. That such is the general rule cannot be doubted. 18 Am. & Eng. Ency. 982.

The character of the publication as to being libelous or otherwise must be determined by giving to the subject-matter thereof, as a whole, that meaning which naturally belongs to the language used. If the reasonable

3. SAME.

import of such language is to work defamation of the reputation of another by imputing to him a condition, or acts or conduct such as that in common experience entail public hatred, contempt, or ridicule, or which in the natural and ordinary course of things operate to deprive him of the benefits of public confidence and social intercourse, the publication must be regarded as actionable *per se.* Otherwise, and there being no claim of special damage, it is the province and duty of the court to so declare, and to deny the right to maintain an action thereon. Stewart v. Pierce, *supra; Quinn v. Insurance Co.,* 116 Iowa, 522.

The present action was commenced by plaintiff, and tried on her behalf in the court below, upon the evident theory that upon its face the publication complained of amounted to a libel actionable *per se.* There was no matter of inducement and colloquium pleaded, nor was there allegation of special damage, or attempt to make proof of such.

It would seem that the trial court was of the opinion that as matter of law the publication alleged was not actionable *per se,* and this conclusion follows from the fact that the question of the character of the publication as to being libelous or otherwise, was submitted to the jury under instructions and to be determined by them in reaching a verdict.

We think this was error in any event. And therefrom it becomes manifest that in our determination of the appeal the principal question necessary to be considered has relation to the character of the publication. If libelous *per se,* the case should not have gone to the jury in the form in which submitted; if not libelous *per se,* the case should have been dismissed because in neither allegation nor proof was there pretense of special damages.

Was the instant publication libelous *per se?* Counsel for appellant, conforming to the innuendo pleaded, contend for an affirmative answer to this question upon these grounds:

4. **LIBELOUS PUBLICATION.** (1) The publication in effect charges plaintiff with having knowingly procured to be made and sworn to before her, a false affidavit; such affidavit amounting in itself to a libel. (2) Such publication charges plaintiff with misconduct in her office as notary public. If either of such grounds be well taken, it may be regarded as certain that consequences would follow the publication such as are sought to be guarded against in the law of libel as defined by the statute. To charge another with the commission of a crime, as that he was guilty with another of preparing and publishing a libel, is by all the authorities libelous *per se.* So, too, to charge one with having knowingly induced another to make a false affidavit is to impute moral turpitude in a high degree, such as ought to subject the offender to contempt and deprive him of public confidence. And it is well settled that to accuse one holding public office that he has been guilty of willful misconduct in connection therewith is libelous and actionable *per se.* 18 Am. & Eng. Ency., 949. That such matters are not

within the strict wording of the alleged libelous publication before us is plain enough. But this is not controlling.

The question is, how would ordinary men naturally understand the language used? It is the sense in which the reader familiar with the explanatory circumstances known to both writer and reader would naturally understand the matter which is controlling. *De Moss v. Haycock,* 15 Iowa, 149. It is not necessarily what the defendant intended to express, but the meaning which he intended others should believe him to have which is important. *Dorland v. Patterson,* 23 Wend. (N. Y.) 424; *Damarest v. Haring,* 6 Cow. (N. Y.) 76. It was Shakespeare who said, " A jest's prosperity lies in the ear of him who hears it." And just so it is of libel and slander. So that we should not indulge in any critical refinements to discover the intent of the writer, nor too carefully scan the language to see if there is not some technical view which will sustain the defendant's contention. Ordinary minds do not critically analyze and scan such publications. They give them their natural and ordinary signification, and to such interpretation we think this defendant should be held. As one court expressed it, words are not to be held in a milder sense than they have in common acceptation; and courts will not strain to find an innocent meaning of the language used. As said by this court in *Truman v. Taylor,* 4 Iowa, 424, words are to be construed according to the ideas they are calculated to convey, and the following are expressions used by other courts: " In their plain and popular sense." " In the sense in which ordinary persons out of court would understand them." " In the sense in which the rest of mankind would ordinarily understand them." " According to their general signification." " In their popular sense." " As understood by the hearer." " According to their natural meaning and common acceptation." " In the sense in which they are generally understood, and if when that puts upon them a guilty sense they are actionable." Many courts have held that one cannot protect himself by the mere grammatical structure of the

phrase. *Cornelius v. Van Slyck,* 21 Wend. (N. Y.) 70; *Com. v. Runnels,* 10 Mass. 518 (6 Am. Dec. 148). Where the language used has reference to or is connected with any other language or event which affects its meaning or effect, it must be construed in relation to such other language or event. *Pratt v. Press,* 30 Minn. 41 (14 N. W. 62); *Zier v. Hofflin,* 33 Minn. 66 (21 N. W. 862, 59 Am. Rep. 9). The following cases are instructive on the question of libel; the words used in each being no more severe than in the instant case: *Colby v. Reynolds,* 6 Vt. 489 (27 Am. Dec. 574); *May v. Jones,* 88 Ga. 308 (14 S. E. 552, 15 L. R. A. 637, 30 Am. St. Rep. 154); *Tillson v. Robbins,* 68 Me. 295 (28 Am. Rep. 50); *King v. Root,* 4 Wend. (N. Y.) 113 (21 Am. Dec. 102); *Boehmer v. Detroit Co.,* 94 Mich. 7 (53 N. W. 822, 34 Am. St. Rep. 318); *Quist v. Kiichli,* 92 Minn. 160 (99 N. W. 642); *Mertens v. Bee Co.,* (Neb.) 99 N. W. 847; *Morse v. Times Co.,* 124 Iowa, 707.

Now it must be remembered that plaintiff was a notary public, and the affidavit charged as having been procured by her was undoubtedly given general circulation. It was at least known to the readers of the paper published by the defendant, or to some of them. To meet this defendant, or the person who made the former affidavit, published the one counted upon in this case. This we think fairly charges — at least it would be so understood by any one who knew the previous events — that the original affidavit was untrue in fact, and that it was procured from the maker upon the sole representations of plaintiff, and at her earnest solicitation and request, and without any knowledge on the part of Mrs. Drager as to its contents. To our minds this clearly charges the plaintiff with inducing Mrs. Drager to libel another. This is the natural and ordinary, and we think the only construction which the language will bear. That being true, the publication is libelous *per se.* And as we have seen, to write and publish of one that he induced another to publish a libel is libelous. So far as the libelous matter is concerned it is entirely immaterial as to

the means used to induce the act.    And it must be conceded for the purpose of this case, that what was said of McCarthy by Mrs. Drager in her purported affidavit was untrue and libelous as to him.    That being so, there can be no doubt that the charge made in the petition is that plaintiff induced Mrs. Drager to publish such libel.    That and that alone would certainly and surely bring plaintiff into contempt and expose her to public hatred, contempt, and ridicule.    Unfortunately neither the reader nor the person spoken of can move for a more specific statement from the author of the libel; and no bill of particulars may be required.    We must take the language used as the average reader would ordinarily understand it; and if by insinuation it charges another with the doing of those things which tend to provoke one to wrath, or expose him to public hatred, or contempt, etc., then it is libelous, *per se.*    And it is not for the courts to say that he did not intend it in that sense.

We conclude that the publication complained of must be regarded as libelous *per se,* and that the case should have gone to the jury upon that theory.

Many other errors are assigned, nearly all of which are disposed of by what has already been said.    Objection made by plaintiff to certain depositions offered by defendant was overruled.    The objection was based upon the fact that such depositions were taken outside of the state and without the issuance of a commission, and, further, upon the fact that they were taken in term time.    The objection was properly overruled.    The record shows that plaintiff participated in the taking of such depositions, and cross-examined the witnesses.    No objection was made thereto until offered in court.    The irregularity, if any, had been waived.

5. DEPOSITIONS: waiver of objections.

Other errors are either without merit, or not likely to arise on a retrial.    That there may be a new trial, the judgment is *reversed.*