---

NATIONAL CASH REGISTER CO. v. SAILING.†

(Circuit Court of Appeals, Ninth Circuit. October 4, 1909.)

No. 1,652.

1. **Appeal and Error** (§ 702*)—Scope of Review—Requests to Charge—Recorded—Instructions Given.

The refusal of requests to charge cannot be reviewed on a writ of error, where the bill of exceptions does not contain the entire charge given.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 2938; Dec. Dig. § 702.*]

2. **Libel and Slander** (§ 50½*) — Privileged Communications — Writings Unnecessarily Defamatory.

The rule that communications by one having an interest to one having an equal interest are privileged, if made in good faith and without malice, does not protect against a communication which is unnecessarily defamatory.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 138–140; Dec. Dig. § 50½.*]

3. **Libel and Slander** (§ 45*)—False Statements—Privilege.

Where plaintiff had resigned his position, and his resignation had been accepted, and his employment terminated, several days before the writing of the letter which purported to discharge him, a communication to defendant's agent, reciting that plaintiff had been discharged from his employment for cause, that defendant would not again give him a position under any circumstances, and that he was "a dirty dog and a traitor," known by the writer to be false, and intended to prevent plaintiff's success in his endeavor to go into business for himself, was not privileged.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 139; Dec. Dig. § 45.*]

4. **Libel and Slander** (§ 34*)—Privileged Subject—Privileged Communication.

In the law of libel, the subject may be privileged, while the communication may not.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 113; Dec. Dig. § 34.*]

5. **Libel and Slander** (§ 123*)—Privileged Communication—Question for Jury.

Where there is uncertainty whether the facts which give an alleged libelous communication a privileged character have been established by proof, it is not error to submit such question to the jury.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 362; Dec. Dig. § 123.*]

6. **Libel and Slander** (§ 124*)—Instructions—Presumptions and Burden of Proof.

Where a communication was false, known by the writer to be so, and was too defamatory to be privileged, an instruction defining "prima facie"

---

to be that the law assumes the communication was false and unprivileged, that the presumptions were disputable, and that defendant was allowed, where the falsity and unprivileged character of the publication was specifically denied, to establish both by proof, was not error.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 367; Dec. Dig. § 124.*]

7. LIBEL AND SLANDER (§ 101*)—PRIVILEGE—BURDEN OF PROOF.

The burden of proof of privilege is on the defendant.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 279; Dec. Dig. § 101.*]

8. LIBEL AND SLANDER (§ 112*)—MALICE—EVIDENCE.

Where defendant wrote a letter concerning plaintiff, falsely stating that he had been discharged for cause, that he was "a dirty dog and a traitor," and one whom defendant would not give a position to under any circumstances, and the writer of the letter, in an action for slander, testified that it was part of his business to look out for people going into business in opposition to defendant, and that he had heard that plaintiff was about to go into business for himself, and wrote the letter "to nip plaintiff's proposition in the bud," such facts were sufficient to prove malice.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 329; Dec. Dig. § 112.*]

9. LIBEL AND SLANDER (§ 50*)—QUALIFIED PRIVILEGE—GOOD FAITH.

A libelous communication is not qualifiedly privileged, unless made in good faith, with the honest belief that it is true.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 149; Dec. Dig. § 50.*]

10. LIBEL AND SLANDER (§ 123*)—GOOD FAITH—QUESTION FOR JURY.

Whether a libelous communication was made in good faith is for the jury.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 362 · Dec. Dig. § 123.*]

11. LIBEL AND SLANDER (§ 5*)—MALICE—PROOF.

In an action for libel, malice may be inferred from the fact that the defamatory communication was false, and known to be so by him who uttered it.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 278; Dec. Dig. § 5.*]

In Error to the Circuit Court of the United States, for the Southern District of California.

Action by C. Z. Salling against the National Cash Register Company. Judgment for plaintiff, and defendant brings error. Affirmed.

In May, 1904, the defendant in error entered into the employment of the plaintiff in error as a traveling salesman within the state of California, and continued in such employment until April 21, 1906. The plaintiff in error, a corporation of the state of Ohio, had its principal place of business in the city of Dayton, and F. L. Ditzler was general manager of all its American agencies for the sale of its goods, and N. F. Thomas was general manager, under his direction, of the business of said corporation in the state of California, and had general charge and control and direction of all such business in that state, including the authority to hire and discharge employés. On April 11, 1906, the defendant in error sent to the plaintiff in error at its home office in Dayton his resignation as an employé. On April 16th Ditzler, in his official capacity as manager, telegraphed to the defendant in error, accepting his resignation, to take effect April 21, 1906, and on the same day wrote him a friendly letter, acknowledging appreciation of his honesty and candor in stating his true reasons for resigning, and expressing "best wishes" for his success in whatever line of work he might engage. On April 21, 1906, said contract of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

employment ended. About this time Thomas learned that the defendant in error was about to enter into the business of selling secondhand cash registers at Los Angeles. On April 26, 1906, he wrote the plaintiff in error as follows: "Exercising our option as per our contract with you, I hereby cancel your contract with the National Cash Register Company, to take effect immediately. I have advised the sales department of my action. While you have been in our employ, and while accepting our salary, you have been devoting your time to other work, and in many other ways doing things that warrant me in the action taken herein." On or about May 2, 1906, the plaintiff in error issued, published, and distributed to its agents throughout the United States and Canada a circular letter containing the following: "The company has been obliged to terminate the employment of Mr. C. Z. Salling for cause. We must absolutely forbid Mr. Salling from being received in any of our offices." On July 6, 1909, Thomas wrote to E. B. Wilson, who represented and acted for the plaintiff in error as its agent and had charge of its office and business in Los Angeles, subject to Thomas' control, direction, and supervision, a letter as follows: "I am in receipt of a letter from Mr. Brizzolari, who says he has met Salling, and that Salling has been in conference with Hallar. Salling says he is going into the secondhand cash register and rental business, etc. While neither you nor I have any faith in Salling's ability to get into a business of this kind, it is still our duty to be on the lookout for anything that may injure the company's business. I would therefore ask you to keep this on your mind, and, should you get an opportunity, see Mr. Hallar, telling him this much, at least—that Salling is a man who has been discharged from our employ, and one whom we would not give a position to under any circumstances. I want to say one other thing. I wish you would, upon receipt of this letter, bring it to the attention of Mr. Alexander and Mr. Holmes. I must absolutely forbid Mr. Salling from being received in any of our offices. I know you feel as I do about this matter, and you may act upon my authority if you will. If he calls at your office, I want him told that we do not care for his company, and will be much obliged to him if he would keep away from us hereafter. Please do not fail to do this, as he must not make our office his loafing place. * * * Don't forget my request about Mr. Salling, for I want that dirty dog to understand that he cannot get into a cash register office in district No. 9. There is only one way to treat a traitor, and you know what that way is."

The defendant in error brought an action against the plaintiff in error to recover damages for libel in issuing and publishing the circular letter above referred to, alleging that the same was false and malicious, and was published and circulated with intent to injure the defendant in error in his character, reputation, and standing as salesman and business man. In a second cause of action upon the second letter, the complaint alleged that the Hallar referred to there was X. H. Hallar of Los Angeles, Cal., and that at the time when the letter was published the defendant in error was conducting negotiations with Hallar for the establishment and maintenance of a corset factory, and that while said negotiations were pending the plaintiff in error sent said letter to Hallar for the purpose of creating distrust and suspicion in his mind against the defendant in error; that the letter was received and read by Hallar in July, 1906, and that after he had read it, solely on account thereof, he broke off negotiations with the defendant in error, and declined to enter into any contract with him, to his damage in the sum of $25,000. The plaintiff in error answered, denying that the plaintiff in error sent notice to Thomas of the resignation of the defendant in error, and denying that the latter ceased to be an employé of the plaintiff in error on April 21, 1906. It admitted that, at about the time when the defendant in error sent in his resignation, the plaintiff in error became informed that he had resigned for the purpose of entering into the secondhand cash register business in the state of California, and that the plaintiff in error regarded such business as conflicting with and interfering with its own business, but denied that it was unfriendly or hostile to the defendant in error on that account. It admitted the distribution of the circular among its agents throughout the United States and Canada, and alleged that it was a privileged communication. Answering the second cause of action, the plaintiff in error alleged that it had not knowledge

whether Hallar received or read the letter of Thomas to Wilson, or that on that account he broke off his said negotiations with the defendant in error, and it denied that said letter was published with intent to injure the defendant in error, and alleged that the same was a privileged communication. Upon the trial of the cause the jury returned a verdict for the plaintiff in error in the sum of $5,000 "as damages on account of the injury and prejudice to plaintiff's good name, reputation, and credit, and in the sum of nothing as punitive and exemplary damages."

Lawler, Allen, Van Dyke & Jutten and Henry S. Van Dyke, fc plaintiff in error.

Davis, Kemp & Post and James P. Clark, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). Error is assigned to certain of the instructions given by the court to the jury and to the denial of certain requested instructions. We are precluded from considering the latter, for the reason that the bill of exceptions does not contain the entire charge. For aught that we know to the contrary, the court properly instructed the jury upon all questions involved in the requested instructions.

One of the instructions excepted to is the following:

"Every publication which charges upon or imputes to any person that which exposes such person to hatred, contempt, ridicule, or obloquy, or which causes such person to be shunned or avoided, or which has a tendency to injure such person in his or her occupation, is prima facie false and unprivileged, and implies malice in the author or publisher."

The exception taken to this was that it was erroneous for want of facts rendering it applicable, and that the facts in the case showed that the communications were privileged, and therefore malice would not be implied in the author of them, and because the instruction left it to the jury to decide whether or not the communications were qualifiedly privileged. The rule is that a communication made by one who has an interest to one who has a corresponding interest is privileged, if made in good faith and without malice; but where the communication goes beyond what the case requires, and is unnecessarily defamatory, the person making the same will not be protected. Did the undisputed facts show that the communications in this case came within the rule? The testimony shows, in the first place, that they were false, and known to be false. It was not true that the defendant in error had been discharged from his employment for cause, or that he had been discharged at all. He had resigned his position, his resignation had been accepted, and his employment had terminated, several days before the date of the paper which purported to discharge him. The evidence is that, between the date of his resignation and the issuance of the so-called discharge, knowledge had come to the officers of the plaintiff in error that the defendant in error intended going into a business which would compete with theirs. Therein is to be found the apparent motive of the so-called discharge, and of the communications which became the subject of this action.

It is urged that the plaintiff in error was justified in directing its employés to exclude the defendant in error from its various places of business, in order to prevent his acquiring information which might

be advantageous to him, but detrimental to them, in view of the competing business in which he was about to enter. Undoubtedly this is true. But it does not appear on the face of the communications that such was their purpose. The subject may be one that is privileged, and a communication on that subject be unprivileged. A circular stating that the company had been obliged to terminate the employment of the defendant in error for cause, and that "we must absolutely forbid Mr. Salling from being received in any of our offices," would, upon its face, seem to have been intended only for the purpose of discrediting the defendant in error and injuring his reputation. It went beyond the plain necessity of the situation, and in that respect is not unlike those which were criticised by the courts in Merchants' Ins. Co. v. Buckner, 98 Fed. 222, 39 C. C. A. 19–30, and Landon v. Watkins, 61 Minn. 137, 63 N. W. 615. It would have been error to instruct the jury that such a communication was, upon its face, privileged. Tonini v. Cevasco, 114 Cal. 266, 46 Pac. 103; Merchants' Ins. Co. v. Buckner, 98 Fed. 222, 39 C. C. A. 19.

It was not essential to the protection of the business of the plaintiff in error to cast imputation upon the character of the defendant in error. It would have been sufficient to warn the employés to withhold from him all information regarding the business, and, for that purpose, to exclude him from the company's offices. Had the communications in this case been of that character, it would have been the province of the court to decide whether they were privileged, as was held in Carpenter v. Ashley, 148 Cal. 423, 83 Pac. 444, and other cases cited by plaintiff in error. But it is well settled that, where there is uncertainty whether the facts which give the communication the privileged character claimed for it are established by the evidence, it is not ground to reverse the judgment, if the question is submitted to the jury. 25 Cyc. 747; 13 Enc. of Plead. & Prac. 107; Klinck v. Colby, 46 N. Y. 427, 7 Am. Rep. 360; Howland v. Blake Mfg. Co., 156 Mass. 543, 31 N. E. 656; Nord v. Gray, 80 Minn. 143, 82 N. W. 1082.

Error is assigned to the following:

"The words 'prima facie,' heretofore employed in these instructions, mean that the law presumes that the publication such as there described was false and unprivileged. These presumptions, however, are disputable, and the defendant is allowed, where the alleged falsity or unprivileged character of the publication are specifically denied, as in the present case, to establish both or either of said denials by proof; and, if such proof be made, it justifies the publication, and constitutes a complete defense to the action."

As the bill of exceptions does not contain the whole of the instructions, we are not advised as to the use of the words "prima facie" as theretofore employed in the instructions, and we therefore cannot impute any error to the charge that the law presumes that the publication such as there described was false and unprivileged. The remainder of the instruction correctly states the law.

It is urged that the burden of proof was upon the defendant in error to establish by a preponderance of the evidence that the communication was not in fact privileged by proof of the fact that it involved actual malice, and that proof of actual malice was entirely wanting in the case. But the burden of proving the privilege claimed lies upon the

defendant. 18 Am. & Eng. Enc. of Law, 1031; Schomberg v. Walker, 132 Cal. 224, 64 Pac. 290; King v. Patterson, 49 N. J. Law, 417, 9 Atl. 705, 60 Am. Rep. 622; Ritchie v. Widdemer, 59 N. J. Law, 290, 35 Atl. 825; Newell on Libel and Slander, §§ 71, 72. As we view the record, there was ample proof of malice. There was proof of it in the known falsity of the charge that the company had been obliged to discharge the defendant in error for cause. There was proof of it in the language employed in the letter of Thomas to Wilson, in which Thomas referred to the defendant in error as a "dirty dog" and "a traitor," and particularly requested Wilson to see Mr. Hallar and tell him that the defendant in error "is a man who has been discharged from our employ, and one whom we would not give a position to under any circumstances." The motive is further shown by Thomas' testimony, in which he said:

"It is part of my business to look out for somebody that is going into business in opposition to the company. I was endeavoring to nip Salling's proposition in the bud, you bet. * * * I guess my object in putting the facts before Hallar was so that he would not go into the secondhand business with Salling."

Error is assigned to an instruction in which the court, after affirming the right of an employer to communicate with his employé upon any subject relating to the business in which they are mutually interested, and to communicate with a common employé with reference to the subject-matter of their common employment, said:

"If, however, such statement is known to the party communicating it to be false, such knowledge excludes the existence of good faith, and takes from the communication what otherwise would be its privileged character."

It is urged against this instruction that knowledge on the part of the author of the communication that it is false does not necessarily exclude the existence of good faith, nor take from the communication what otherwise would be its privileged character. To this we cannot assent. In order to the protection of a communication as qualifiedly privileged, it must appear that it was made in good faith, and in the honest belief that it was true. Swan v. Tappan, 5 Cush. (Mass.) 104; Gassett v. Gilbert, 6 Gray (Mass.) 94; Klinck v. Colby, 46 N. Y. 427, 7 Am. Rep. 360; Quinn v. Scott, 22 Minn. 456. And the question whether the communication was made in good faith is one of fact for the jury. Bacon v. Michigan Central R. R. Co., 66 Mich. 166, 33 N. W. 181, and cases there cited.

It is contended that the court erroneously instructed the jury in charging them that damages might be recovered in such an amount as the jury might find would fairly compensate the defendant in error for the injury done him, "regardless of the defendant's motives in making the publication, and without actual proof of the opinions of witnesses or otherwise as to the extent of the loss." It was objected to this instruction that actual malice must be established by actual proof, by testimony or otherwise. If it is meant by this that, in order to recover damages in such a case as this the plaintiff must adduce proof of express malice on the part of the defendant, the objection was not well taken. Malice may be inferred from the fact that the defamatory communication was false, and known to be false by him who uttered

it. White v. Nicholls, 3 How. 266, 11 L. Ed. 591; Noonan v. Orton, 32 Wis. 106; Bacon v. Mich. Cent. R. R. Co., 66 Mich. 166, 33 N. W. 181; Locke v. Bradstreet Co. (C. C.) 22 Fed. 771; Gassett v. Gilbert, 6 Gray (Mass.) 98. In White v. Nicholls et al., 3 How. 287, 11 L. Ed. 591, the court approved the following from the opinion in Wright v. Woodgate, 2 Cromp., M. & R. 573:

"A privileged communication means nothing more than that the occasion of making it rebuts the prima facie inference of malice arising from the publication of matter prejudicial to the character of the plaintiff, and throws upon him the onus of proving malice in fact, but not of proving it by extrinsic evidence only. He has still a right to require that the alleged libel itself shall be submitted to the jury, that they may judge whether there is evidence of malice on the face of it."

The record contains assignments of error to the rulings of the court as to the admissibility of testimony. We find no error in them, and, as they are not discussed in the brief of the plaintiff in error, we deem it unnecessary to discuss them here.

Finding no error for which the judgment should be reversed, we affirm the same.