## CATHERINE H. RICHMOND v. JOHN POST.[1]

October 26, 1897.

Nos. 10,701—(82).

**Slander—Distinction from Libel.**

When considering the sufficiency of the allegations in complaints, a distinction has long been recognized between actions for libel and for slander. Words, when committed to writing and published, are considered as libelous, which, if only spoken, would not subject the person speaking to any action.

**Same—Pleading—Alleging Extrinsic Facts.**

G. S. 1894, § 5257,—on the subject of pleading in actions for defamation, —merely dispenses with the inducement to show the application of the language used to the plaintiff. It does not dispense with the necessity of averment of extrinsic facts to show the meaning of ambiguous language, and what it was understood to mean. If the words have the slanderous meaning alleged, not by their own intrinsic force, but by reason of some extraneous fact, this fact must be alleged in the complaint in a traversable form with a proper colloquium, to wit, the averment that the words in question were spoken of, concerning, or with reference to, such fact, whatever it is, which give to words otherwise indifferent or ambiguous the particular defamatory meaning attributed to them.

[1] Reported in 72 N. W. 704.

Same.

> *Held*, in the case at bar, that under these rules the complaint herein
> failed to state a cause of action.

Appeal by defendant from an order of the district court for Otter Tail county, Baxter, J., denying his motion for a new trial after a verdict of $300 for plaintiff. Reversed.

*C. J. Gunderson*, for appellant.

*E. E. Corliss*, for respondent.

COLLINS, J.

Action for slander, in which plaintiff secured a verdict. Defendant appeals from an order denying his motion for a new trial.

The primary question arises out of an objection made by defendant's counsel to the reception of any evidence under the complaint upon the ground that it failed to state facts sufficient to constitute a cause of action, the objection being overruled by the trial court. The plaintiff attempted to set forth four distinct causes of action in the complaint, but at the trial no testimony was offered except as to one. Certainly, if this cause of action was insufficiently pleaded, the allegations of the complaint respecting the others were wholly inadequate.

As to the cause of action concerning which evidence was offered and received, the complaint, after setting out that plaintiff was a married woman, having one son; that for two years prior thereto she had been engaged in the business of keeping an hotel in a certain village; that she had maintained a good reputation for the hotel and for her business; that she had always conducted herself properly and respectably; and that defendant was, and for said two years had been, a business man in said village of great wealth and influence,—alleged:

"That [defendant] during the month of December, 1895, at the store of the defendant, in Parker's Prairie, in the presence and hearing of one Harry Tombes, spoke of and concerning the plaintiff the following words: 'I am going to build an addition to my store. I am going to get out stone, and put a good foundation under it, and when I get it done I am going to paint it red, and run opposition to Mrs. Richmond and Dr. Henderson. If they can make money dishonestly, I have the same right,'—thereby meaning and being

understood by the said Harry Tombes to mean that the plaintiff was keeping a house of prostitution at her said hotel."

It was also averred that said words were false and untrue.

In passing upon the sufficiency of the above-quoted allegation, it must be remembered that a distinction has long been recognized between actions for libel and for slander. Words, when committed to writing and published, are considered as libelous, which, if only spoken, would not subject the person speaking to any action (13 Am. & Eng. Enc. Law, 296, and cases cited in note 8); so that authorities as to the sufficiency or insufficiency of complaints in actions for libel are not always in point when we are considering actions for slander.

What is essential, in order to render spoken words actionable per se, is well stated in Stroebel v. Whitney, 31 Minn. 384, 18 N. W. 98. They need not, in express terms, contain a criminal charge. The question is, how would ordinary men naturally understand the language? If the charge is not direct and unambiguous, do the words consist of a statement of facts which would naturally and presumably be understood by the hearers as a charge of crime?

When we read the words attributed to defendant in this complaint, how can it be said that in their ordinary acceptation they would naturally or presumably be understood as imputing a charge that plaintiff was keeping a house of prostitution at her hotel? If the statement that defendant was going to build an addition to his store, and put a good foundation under it, signified anything, it was that he proposed to increase his facilities for doing a mercantile business. That he was going to paint it red, and run it in opposition to plaintiff and the other person named, who were making money dishonestly, might indicate that he proposed to make the addition noticeable, and by this means be the better enabled to compete with the persons named in some disreputable or illegitimate trade or business, already conducted by the latter.

It is obvious that the words alleged to have been uttered by defendant could not, in their ordinary acceptation, naturally or presumably be regarded or understood by those who heard them as imputing the crime charged in the complaint. Nor did they, by their own intrinsic force, have the slanderous meaning attributed and

alleged. They were, at best, ambiguous, and not easily understood, in the absence of some existing extraneous fact which would clear up the doubt and ambiguity; such, for illustration, as the fact that it was well known in that community that a structure painted red was a place in which liquors were sold in violation of the law, or was a house of ill fame. If this was the knowledge and understanding, defendant's remarks would easily be comprehended. Without such knowledge or understanding, the ordinary hearer would be at a loss to know what he meant.

We have a statute (G. S. 1894, § 5257) on the subject of pleading in actions for defamation, but it merely dispenses with the inducement to show the application of the language used to the plaintiff. But it does not dispense with the necessity of averments of extrinsic facts to show the meaning of ambiguous language, and what it was understood to mean. If the words in themselves are not capable of the offensive meaning attributed to them, reference must be made to circumstances which have this effect. McCarty v. Barrett, 12 Minn. 398 (494.) If the words have the slanderous meaning alleged, not by their own intrinsic force, but by reason of some extraneous fact, this fact must be alleged in a traversable form, with a proper colloquium, to wit, the averment that the words in question were spoken of, concerning, or with reference to, such fact, whatever it is, which gives to words otherwise indifferent or ambiguous the particular defamatory meaning imputed to them. Carter v. Andrews, 16 Pick. 1. The actionable quality of the matter as respects the plaintiff must appear from the allegations, and must, of course, be proven.

Counsel for plaintiff recognized the necessity of this when he, despite the objections of his opponent at the trial, was permitted to and did show that in the community where this occurred the phrase "painting a house red" was understood to mean that such a house was of ill fame, and that defendant's expression was understood to be an insinuation that plaintiff was keeping such a house.

As the complaint failed to state a cause of action, and the objection to the reception of any evidence under it should have been sustained, the other questions argued need not be considered.

Order reversed.