PATRICK F. QUINN v. THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, Appellant.

LIBEL: *Defined.* Libel is the malicious defamation of a person made public by any printing, writing, effigy, or pictorial representation.

CONSTRUCTION. For a written article to be defamatory, it must, when given its ordinary meaning, impute to the person assailed some act or attribute tending to expose him to public hatred,

contempt or ridicule, or to deprive him of the benefits of public confidence and social intercourse, or, if the language is innocent on its face, it must be shown by extrinsic facts to have been intended to convey, to its readers, a defamatory meaning as defined.

*Sufficiency of evidence.* The publication complained of was a notice to the public that plaintiff was no longer employed by defendant as an insurance agent, and had not been so employed for a year, and that defendant's policy holders must not pay plaintiff any premiums, but must pay them to defendant's authorized agents. The evidence showed that plaintiff had been employed by defendant and had resigned, but failed to show any reason for ill feeling between the parties, or that plaintiff, after his resignation, ever assumed to collect any of defendant's premiums, or that defendant intended by such notice to charge plaintiff with any such act. *Held*, that the language itself not being libelous, the evidence was insufficient to sustain a verdict for plaintiff.

*Parol interpretation.* There being nothing ambiguous or uncertain in the publication complained of, either by itself, or in the light of the evidence, testimony of a witness who had simply read such publication that he understood it to mean that plaintiff had been wrongly representing himself as defendant's agent was inadmissible.

*When for jury.* Where, in an action for libel, any doubt exists as to the meaning of the publication complained of, so that extrinsic evidence is needed to determine whether it is actionable, the question is for the jury, under proper instructions.

WHEN APPLICATION MUST BE SHOWN. Code, section 3592, providing that, in actions for libel, it shall not be necessary to state any extrinsic facts to show the application of the defamatory matter to plaintiff, or to show that such matter was defamatory, but shall be sufficient to state the defamatory sense in which such matter was published about plaintiff, does not relieve a plaintiff in an action based on language seemingly harmless from the necessity of showing the relations of the parties, or surrounding circumstances which will justify the jury in giving such language a defamatory meaning.

*Appeal from Dubuque District Court.*—HON. FRED O'DONNELL, Judge.

TUESDAY, MAY 13, 1902.

APPEAL from judgment for damages on account of an alleged libel. The facts are more particularly stated in the opinion.—*Reversed.*

*Andrew P. Gibbs* for appellant.

*George A. Barnes* for appellee.

WEAVER, J.—The plaintiff's petition is stated in five counts, each based on an alleged libel. In each count the matter alleged by way of colloquium or inducement, the form of the allegel libel, and the innuendoes thereto attached, are stated in the following form, varied only by the name and date of the newspaper in which the publication was made: "That the defendant is a corporation organized under the laws of the state of New Jersey, and has a branch office in the building known as the 'Security Building,' in the city of Dubuque, Iowa, and at the time of the happening of the grievances hereinafter complained of, one D. Zimmerman was the superintendent of said branch office; that the business of said defendant is that of insuring the lives of individuals. Plaintiff further says that, at and before the time of the happening of the grievances hereinafter complained of, he was also engaged in the insurance business, and occupied rooms in the same building as defendant. Plaintiff further says that he has always sustained a good character, and been reputed and accepted in the community to be a person of good name, fame, and credit, and never suspected of having been guilty of fraud, or the crime of obtaining money under false pretenses, yet said defendant, well knowing the premises, and maliciously intending to injure the said plaintiff, and to expose him to public hatred, contempt, and ridicule, and to deprive him of the benefits of public confidence, and to bring him into public scandal and disgrace among his neighbors, did on the 9th day of November, 1898, falsely, wickedly, and maliciously publish and cause

to be published of and concerning the said plaintiff, in the *Dubuque Daily Telegraph,* a newspaper of general circulation in the city of Dubuque, Iowa, a certain false, scandalous, and malicious libel, as follows: 'Notice, I herewith inform the public that Pat Quinn, Jr.' (meaning plaintiff), 'formerly an agent for me, is no longer employed in any capacity by the Prudential Insurance Co. Nor has he been for the past year. Our policy holders are hereby notified not to pay him any premiums' (meaning thereby that this plaintiff had been collecting premiums from the policy holders of defendant since he ceased to be in its employ), 'but to pay to my authorized agents, or at my office. D. Zimmerman, Supt., Security Building.' " This is followed in each instance by other allegations of injury alleged to have been sustained by reason of such libelous publication. By an amendment filed at a later date it is alleged that Zimmerman, in publishing the notice complained of, acted with authority from the defendant, and that after the publication, plaintiff notified defendant of the same, and that defendant impliedly ratified and approved Zimmerman's act. The defendant demurred to each count of the petition on the ground that the language of the publication complained of is not libelous. This demurrer being overruled, the defendant excepted, but answered and went to trial, which resulted in a verdict for plaintiff for $500. Many errors are assigned, but we do not find it necessary to consider them all.

I. Is the verdict supported by sufficient evidence? Briefly defined, libel is the malicious defamation of a person, made public by any printing, writing, effigy, or pictorial representation. For a written or printed article to be defamatory, the language of the document must be such that, when given its natural and ordinary meaning it imputes to the person thus assailed some act, or attribute, or character which tends to expose him to public hatred, contempt, or ridicule, or to deprive him of the bene-

fits of public confidence and social intercourse; or if the language, upon its face, does not bear such injurious significance, then there must be shown extrinsic facts and circumstances by which it is made to appear that the writing, though innocent and unobjectionable in form, is intended to convey and does convey to its readers a defamatory meaning, as above defined. The manner of pleading a charge of slander or libel has been much simplified by our Code (section 3592), which renders it unnecessary to set out any extrinsic facts for the purpose of showing the application of the defamatory matter to the plaintiff, and makes it sufficient to state the defamatory sense in which the language was used, and that the same was spoken or published concerning the plaintiff. This, in effect, renders unnecessary any statement in the pleadings of the matter formerly called the "Inducement" or "colloquium," but preserves, in effect, the innuendo, which explains the words spoken or written, and annexes to them their proper meaning. *Bloss v. Tobey,* 2 Pick. 320; *Bathrick v. Tribune Co.,* 50 Mich. 629 (16 N. W. Rep 172, 45 Am. Rep. 63). Where the language is of itself plainly defamatory, no innuendo is required, for the words speak for themselves. It is properly employed only where the alleged slanderous words are ambiguous or of doubtful signification, or where, by reason of extrinsic facts and circumstances, the words express a covert or unusual meaning.

*Over v. Schiffling,* 102 Ind. 191 (26 N. E. Rep. 91); *Richmond v. Post,* 69 Minn. 457 (72 N. W. Rep. 704); *Com. v. Morgan,* 107 Mass. 199; *Mason v. Mason,* 4 N. H. 113; *Belknap v. Ball,* 83 Mich. 583 (47 N. W. Rep. 674, 11 L. R. A. 72, 21 Am. St. Rep. 622); *Kinyon v. Palmer,* 18 Iowa, 377; *Hess v. Fockler,* 25 Iowa, 9. On the other hand, if the words are not in any proper sense ambiguous or doubtful, and, in their ordinary and proper signification, convey no defamatory meaning, it is a rule of nearly universal acceptance that such meaning can neither be enlarged nor restricted by innuendo. *McLaughlin v. Fisher,* 136 Ill. 111

(24 N. E. Rep. 60) ; *Lewis v. Soule,* 3 Mich. 514; *Camp v. Martin,* 23 Conn. 92 ; *McFadin v. David,* 78 Ind. 445 (41 Am. Rep. 587) ; *Frank v. Dunning,* 38 Wis. 270 ; *Simons v. Burnham,* 102 Mich. 189 (60 N. W. Rep. 476) ; *Shaffer v. Kintzer,* 1 Binney, 537 (2 Am. Dec. 488) ; *Pelton v. Ward,* 3 Caines, 73 (2 Am. Dec. 251) ; *Van Vechten v. Hopkins,* 5 Johns. 211 (4 Am. Dec. 339.) Under this rule, and under the law as recognized and followed in every other state to which our attention has been called, the language of the publication of which complaint is here made is not libelous, nor can it be made libelous by *innuendo.* Whether our statute already cited has the effect to modify this principle, or restrict its application in this state, it is unnecessary for us now to decide. It is plain, however, that, if the statute exempts the plaintiff from the necessity of pleading the specific facts and circumstances by which language otherwise harmless is shown to be defamatory, it does not exempt him from proving them upon the trial. For instance, it would be manifestly improper for the plaintiff to allege and prove the publication of an article which, when fairly construed, has no defamatory meaning, and then make his case by putting witnesses on the stand to swear that they understood it in a defamatory sense. He must in such case, it seems to us, show extrinsic facts or circumstances in the past or present relations of the parties, surrounding the publication, by which the jury shall be justified in giving to words not ordinarily actionable a slanderous or libelous signification.

Assuming, then, that the petition shows a cause of action, we have to say that we think no libel is shown by the evidence. As we have already said, the notice, standing alone, charges plaintiff with no crime or wrong of any kind. Giving the language its ordinary and accepted interpretation, it is impossible to find therein any allegation, direct or indirect, open or covert, that plaintiff has been guilty of obtaining money under

false pretenses. Even if it should be conceded (as it cannot) that, in notifying defendant's policy holders not to pay premiums to the plaintiff, there was an implied statement that he had been collecting such premiums since he ceased to be in defendant's employment, such statement would not be libelous, in the absence of a charge that in so doing he acted corruptly or dishonestly. We are thus brought to the question whether, outside of the form and substance of the notice set out in the petition, there is any proved fact or circumstance in the light of which the language employed can fairly be given the alleged defamatory meaning. The evidence discloses, by way of such inducement, simply that plaintiff was formerly employed as defendant's agent at Dubuque, and that he had resigned the position some months prior to the alleged libel. If there was any reason for ill feeling between plaintiff and defendant, or between plaintiff and Zimmerman, it is not shown. There is nothing whatever in the record to indicate that plaintiff had assumed to collect premiums due defendant after he ceased to be its agent, nor that defendant desired or intended to be understood, by the notice published, as charging any such act on plaintiff's part. It is not an unusual thing, upon the withdrawal of a partner from a firm or an agent from the service of his principal, to publish that fact, and notify the world that the person so retiring has no longer authority to act in his former capacity. Such notices may not always be necessary or in good taste, and may sometimes give rise to the suspicion that the relations between the parties have become hostile, but they do not imply any disgraceful accusation. We discover absolutely nothing in the evidence to take the notice published by defendant's agent out of this rule. Precedents entirely parallel in facts are not numerous, but we are not without authority bearing directly upon the principle. In *Mulligan v. Cole,* decided by the queen's bench, and reported in volume 33 Law T. (N. S.) 12, the plaintiff had formerly been

a teacher or officer in a school known as the Watsall Science and Art Institute; and, after his withdrawal therefrom, the defendant, acting for the school, published a notice as follows: "The public are respectfully informed that Mr. Mulligan's connection with the Watsall Science and Art Institute has ceased, and that he is not authorized to receive subscriptions in its behalf." This notice the plaintiff made the basis for an action for libel, alleging that the language, in effect, accused him of falsely pretending or assuming to be authorized to receive subscriptions in behalf of said institute. The trial court, upon hearing the testimony, directed a nonsuit. Upon appeal this judgment was affirmed, the court saying: "It seems clear, on looking at the circumstances of the case, that no person who read this advertisement could infer that the plaintiff had been collecting subscriptions in the name of the institute. The words are not fairly capable of bearing such a meaning. * * *" In a concurring opinion in the same case, Mellor, J., says: "Reading the alleged libelous words in their ordinary sense, they are a mere notification to the public that Mr. Mulligan, who had formerly been connected with the institute, had no longer any connection with it. I cannot help thinking that to any ordinary person they would not convey any idea that anything defamatory was intended. I also think that the plaintiff fails in giving the language any other meaning than that which it naturally bears." A somewhat similar holding is found in *Boynton v. Remington,* 3 Allen (Mass.), 397. In that case plaintiff was a coal dealer in Lowell, keeping and advertising for sale genuine Franklin coal, which he alleged had been shipped by the defendant. While he was thus engaged in business, defendant published an advertisement as follows: "The subscribers, the only shippers of the true original Franklin coal, notice that other coal dealers in Lowell than our agent, Mr. W. E. Livingston, advertise Franklin coal. We take this method of cautioning the public against buying of other

parties than Mr. Livingston, if they hope to get the genuine article, as we have neither sold nor shipped to any other party in Lowell, except our agent, Mr. Livingston." This publication was alleged to be libelous, and damages demanded. A demurrer to the petition being sustained, the plaintiff appealed, and the judgment was affirmed. In announcing the decision, Bigelow, C. J., says: "The publication is not libelous. It does not hold the plaintiff up to public hatred, contempt, or ridicule. It simply states that the defendants neither sold or shipped any Franklin coal to any person in Lowell, except to their agent, Mr. Livingston. The truth of this assertion is not denied in the declaration, nor does the publication allege that the plaintiff does not sell the genuine Franklin coal. It contains only a caution to the public to deal with the agent of the defendants if they wish to procure the genuine article. This was within the privilege of fair dealing, and cannot be tortured into a disparagement of the plaintiff's character." These authorities are in consonance with reason and justice, and, applying the principles thus announced to the appeal now before us, we hold that the verdict of the jury has not sufficient support in the evidence.

II.   To show that the alleged libelous publication has a defamatory meaning, plaintiff called several witnesses to the stand, and, after proving by them that they had seen and read the article about the time it was published, put to each of said witnesses the following question: "State to the jury what you understood that article to mean at the time you read it." Defendant's objection to the competency of this testimony was overruled, and the witness was allowed to answer, in substance, that he interpreted the published notice as a charge that plaintiff had been wrongfully representing himself to be defendant's agent, and by such means had collected and converted to his own use moneys belonging to defendant. This ruling was error. Whatever may be the rule of evidence in this respect in cases

where the language complained of is in itself ambiguous or uncertain, or where proof of extrinsic facts casts any doubt upon the real meaning intended to be conveyed, it is a well-established doctrine that, in the absence of such ambiguity or uncertainty, it is not competent for a witness who has simply read the alleged libel to put his construction upon the language employed. To admit such testimony is to allow the witness to usurp the functions of the court and jury. *Anderson v. Hart*, 68 Iowa, 400. The case cited was an action for libel alleged to be contained in an affidavit in which defendant stated that a certain paper bearing his name was a forgery. A witness was permitted to swear that he understood from the writing that defendant meant to accuse plaintiff of the crime. This was held error. It is there said: "It will be observed that the witness was asked to construe the libel, and, in effect, was asked to look at the affidavit, and state whom the defendant meant to charge with the crime. *. * * When a libelous communication on its face, directly, or by way of *innuendo* or otherwise, refers to any person, it is possible a witness may be asked who or what person was meant. Subject to this rule, the decided weight of authority, we think, is that the alleged libel must be construed by the court and jury." "Where the language is clear and unambiguous, the question whether or not it is actionable is one for the court, as is, also, the question whether or not the words, *ex vi termini*, or as explained by the inducement and colloquium, are reasonbly susceptible of the meaning which is attributed to them by the *innuendo*." 18 Am. & Eng. Enc. Law (2d Ed.) 990. Where any doubt exists as to the meaning of a publication, so that extrinsic evidence is needed to determine whether it is actionable, it is then a question for the jury, under proper instructions by the court. *Bourreseau v. Journal Co.,* 63 Mich. 425 (30 N. W. Rep. 376, 6 Am. St. Rep. 320); *Mosier v. Stoll,* 119 Ind. 245 (20 N. E. Rep. 752). The

present case presents no feature which takes it out of the rule this court has approved in *Anderson v. Hart, supra.*

Of other questions suggested by counsel, some are not fully argued, and we do not attempt to decide them. It may be proper, however, in view of a new trial, to observe that from the record before us there is serious doubt whether the evidence is sufficient to justify the finding that Zimmerman acted with any authority from the defendant in publishing the alleged libel.

The judgment of the district court is REVERSED.