MARY SCHAEFER v. LUCY SCHOENBORN.[1]

May 10, 1907.

Nos. 15,146—(59).

**Slander—Actionable Words.**

Spoken words are not actionable per se, unless they charge the commission of a crime; but it is not necessary that the charge be made in direct terms, for such words are actionable if they would naturally and presumptively be understood by those who hear them as charging a crime.

**Same—Local Meaning—Pleading.**

Where the words spoken do not ordinarily import a criminal charge, but they have a local and special meaning to that effect at the place where spoken, and are so understood by the persons to whom they are spoken, they are actionable per se, if such meaning and understanding are properly alleged by way of inducement.

[1] Reported in 111 N. W. 843.

**Same.**

> Rules applied, and *held*, that the fourth, seventh, and ninth counts of the complaint herein allege facts sufficient to constitute a cause of action, but that the remaining counts demurred to do not state a cause of action.

Appeal by plaintiff from an order of the district court for Wilkin county, Flaherty, J., sustaining a demurrer to the fourth, fifth, sixth, seventh, eighth, ninth and tenth causes of action alleged in the amended complaint. Modified, so as to overrule the demurrer to the fourth, seventh, and ninth causes of action.

*H. G. Wyvell* and *Purcell & Divet,* for appellant.

*Lewis E. Jones,* for respondent.

START, C. J.

Action for slander. The complaint purports to allege ten separate causes of action in as many counts for words spoken on a like number of occasions. The defendant demurred to each count, except the first three, and it was sustained by the order of the trial court, from which the plaintiff appealed.

The rules of law by which the sufficiency of the allegations of the complaint must be tested are well settled in this state. Spoken words are not actionable per se, unless they charge the commission of a crime; but it is not necessary that the charge be made in direct terms, for such words are actionable if they would naturally and presumably be understood by those who hear them as charging a crime. The innuendo cannot extend the meaning of the words spoken beyond their ordinary acceptation. Its office is to explain the words and annex to them the sense in which they were used in cases where the words have two or more meanings. Where the words spoken do not ordinarily import a criminal charge, but they have a local and special meaning to that effect at the place where spoken, and are so understood by the persons to whom they are spoken, they are actionable per se, if such meaning and understanding are properly alleged by way of inducement. Stroebel v. Whitney, 31 Minn. 384, 18 N. W. 98; Blakeman v. Blakeman, 31 Minn. 396, 18 N. W. 103; Glatz v. Thein, 47 Minn. 278, 50 N. W. 127; Richmond v. Post, 69 Minn. 457, 72 N. W. 704; Radke v. Kolbe, 79 Minn. 440, 82 N. W. 977; Johnson v. Force, 80 Minn. 315, 83 N. W. 182.

The complaint alleges that the plaintiff is, and at all times therein mentioned was, a married woman, the wife of Clement Schaefer, living with him as husband and wife, with three children, the issue of the marriage, at Breckenridge, in this state; that during all the time stated the defendant and John Schoenborn have been and now are husband and wife, living and residing together as such, at Breckenridge; that the plaintiff, the defendant, and their respective husbands have a large circle of friends and acquaintances at Breckenridge, this state, and at Wahpeton, North Dakota; and that on June 15, 1903, the plaintiff and the defendant's husband were passengers on the same excursion train from Breckenridge to Duluth, which fact was well known to the friends and acquaintances of the plaintiff and defendant and to her. Each count of the complaint after the first one realleges the foregoing facts.

The fourth count of the complaint alleges that on December 24, 1903, at Breckenridge, the defendant falsely and maliciously spoke of the plaintiff to Mrs. Mary Mehl and other persons these words:

> She (meaning thereby this plaintiff) went with my husband to Duluth. He paid everything. She (meaning plaintiff) worked him all the time they were down there. We (meaning thereby herself and husband) were always a happy couple until she (meaning thereby this plaintiff) made trouble between us and spoilt him. * * * That in the vicinity of Breckenridge, where the said language was used, the term "worked" has a well-understood local meaning, and according to such understanding means, when used in connection with a married woman having worked a man other than her husband, that such married woman has been guilty of sexual intercourse with such man in return for money or other substantial reward, and that said term "worked" was so used by the said defendant in the statement above referred to, and was so understood by persons hearing the same.

The words which are made the basis of the fifth count were these:

> She (meaning the plaintiff) went with my husband to Duluth and he spent about fifty dollars ($50.00) with her down there, and no decent woman would do as she has done.

It is alleged that these words were spoken of the plaintiff to Mrs. Joe Schmitt, and that they meant, and were understood by those who heard them to mean, that the plaintiff accompanied the defendant's husband to Duluth, and on such occasion had been guilty of unchaste conduct, and was indecent in her conduct toward men.

The sixth count alleged:

> That on or about the 22d day of February, 1904, at Wahpeton, North Dakota, in the presence and hearing of a large number of people, the defendant, Lucy Schoenborn, did falsely and maliciously, and with intent to injure and defame the plaintiff in her good name and character, speak of and concerning the plaintiff those certain other scandalous and defamatory words, to wit: "Mr. Schaefer don't know whether he is feeding his own kids or some one's else." That said language meant, and was intended to mean, and was understood by those hearing the same to mean, that this plaintiff had been guilty of adultery, and that, by reason of such adulterous conduct on the part of the plaintiff, her husband, Mr. Schaefer, did not know whether her children were the children of himself or of some other man.

The seventh count alleged:

> That in Breckenridge, Minnesota, on or about the 17th day of March, 1904, the defendant, Lucy Schoenborn, did falsely and maliciously, and with intent to injure the plaintiff in her good name and character, speak of and concerning the plaintiff, in the presence of Mrs. Henry Bodson and divers other persons, those certain other false, scandalous, and defamatory words, to wit: "There goes the thing that worked my husband for a whole year."

This was followed by the same allegation as to the local meaning of the word "worked" as in the fourth count.

The eighth count alleges that the defendant falsely spoke of the plaintiff, naming time, place, and person, these words: "There goes the thing that made all the trouble." Then follow allegations to the effect that there existed difficulties between the defendant and her

husband, growing out of and connected with the charges theretofore made by the defendant of intimacy between the plaintiff and defendant's husband, which were known to the persons in whose presence the words were spoken, and that such words were meant to mean, and were understood by the persons hearing them as charging, that the plaintiff had been guilty of improper and unchaste intimacy with the defendant's husband.

The ninth count alleges:

> That in Wahpeton, North Dakota, on or about the 24th day of March, 1904, in the presence and hearing of Mrs. Fred Sanders and other persons, the defendant, Lucy Schoenborn, did falsely and maliciously, and with intent to injure and defame the plaintiff in her good name, reputation, and character, speak of and concerning the plaintiff the following false, malicious, and defamatory words, to wit: "She worked my husband to take her to Duluth, but I could not go."

This was followed by the same allegations as to the local meaning of the word "worked."

The words which are made the basis of the tenth count are these:

> Mrs. Schaefer went with my husband to Duluth, and he paid for everything, and it looked very funny to me. They had it all made up that they were going; but he told me they were not, until all of a sudden he changed his mind and went.

This was followed by allegations to the effect that the words were intended to mean, and were understood to mean by those who heard them, that the plaintiff and the defendant's husband went to Duluth together for the purpose of having sexual intercourse.

The fourth, seventh, and ninth counts may be considered together. The charge in each is to the effect that the plaintiff "worked" the defendant's husband. This charge, of itself, unaided by any extrinsic facts, does not impute the commission of a crime. But it is alleged in the complaint, and admitted by the demurrer, that at the time and place the words were spoken the word "worked" had a well-understood local meaning, when used in connection with a married woman working a man, and meant that she was guilty of sexual intercourse with

him, and that the word was used in this case by the defendant, and understood by those who heard it, in this sense. Such allegations are not simply a matter of innuendo, but are allegations of extrinsic facts. If such was the meaning of the word "worked" in the connection it was used at the place the words were spoken, and was so understood by those who heard them, then the defendant charged the plaintiff with adultery just as plainly as if she had used that word. Any other ruling would enable persons, living in communities or belonging to circles in which slang is used to designate crimes, to slander others with impunity. It follows that each of the fourth, seventh, and ninth counts states facts sufficient to constitute a cause of action.

Applying the same test to the other counts, it is clear that none of them alleges facts sufficient to constitute a cause of action. The words alleged to have been spoken do not, in and of themselves, charge the plaintiff with a crime. Nor are there any allegations of extrinsic facts showing that the words spoken had a local and special meaning at the place and with the persons at and to whom they were spoken, different from their ordinary meaning, from which the conclusion would follow that they charged a crime.

The order appealed from must be modified, so as to overrule the demurrer as to the fourth, seventh, and ninth counts of the complaint, and sustain it as to the rest of the counts demurred to. So ordered.