LOIS J. WISNER, Appellant, v. IRA J. NICHOLS, Appellee.

**Pleadings:** WHEN MAY BE STRICKEN. Upon the repleading of matter previously held insufficient to state a cause of action, the opposite party may have the new pleading stricken from the files.

**Same:** DEMURRER: REPLEADING: WAIVER OF OBJECTION. Where the ruling upon demurrer, or a motion serving the same purpose, holds that no cause of action was stated, to which a proper exception was taken, the right to present on appeal the correctness of such ruling was not waived by repleading the same matter, which new pleading was stricken from the files because a repleading of the same matter.

**Same:** ESTOPPEL TO ALLEGE ERROR. Where a demurrer to plaintiff's petition was sustained on the ground that it did not state a cause of action, and a second demurrer was interposed to a substituted petition pleading the -same facts, with a motion to strike material portions of the substituted petition, and asking that the petition

be stricken as a repleading, the defendant thereby invoked the judgment of the court on matters of substance raised by the motion, and the plaintiff was entitled to have the rulings relative to the legal sufficiency of the substituted petition reviewed on appeal; as it was the right of the court to permit the substituted petition to remain on file for consideration of the motion, even though repleading matters originally stricken.

**Libel:** CONSTRUCTION OF ARTICLE: PLEADINGS: INNUENDO: SUFFICIENCY. 4   That part of an alleged libelous article which it is claimed connects plaintiff with the acts charged as constituting the libel should be construed together with the entire article of which it forms a part, for the purpose of determining whether it has reference and is applicable to the plaintiff. The alleged libelous article in the instant case stated that judging from newspapers and current reports' a certain town led all others in the county for drunkenness and immorality; that every week a number of drunks were hauled into police court for fighting and carousing; and, "the Wisner Estate, while helping in a financial way, has carried a trail of destruction along its path." The article further stated that it was not to be inferred that the people of the town were not upright, conscientious, righteous citizens, but they seemed powerless to combat the current of this "maelstrom of destruction." The petition alleged that by "Wisner Estate" was meant the plaintiff (her name being Wisner) and was so understood by the readers of the article, as she was one of the owners of the estate, as was commonly known and known to defendant, and that the article was intended to lead its readers to believe that plaintiff was responsible for the immoral conditions pointed out. *Held,* that there were sufficient allegations by way of innuendo to connect plaintiff with the immoral conditions referred to, and a motion to strike the same was properly overruled.

**Same:** INNUENDO. An actionable libel must refer to some ascertained 5   or ascertainable person, who must be the plaintiff; but the plaintiff need not be directly named, it will be sufficient if the libelous matter contains such description, reference or extraneous facts and circumstances, as show that the writer intentionally referred to plaintiff, and that the article was so understood by its readers. The innuendo or explanation, however, cannot extend the sense of the expressions in the alleged libel beyond their own meaning.

**Same.** If the libelous publication refers merely to a class and is so gen-6   eral in terms that individual damage cannot be presumed, no private suit can be maintained. But if the libel is against a class and may be made of definite application, anyone of that class can maintain an action upon a showing that the publication refers especially to him.

**Appeal:** DEFECTIVE ABSTRACT: PENALTY. The rule of the appellate court requiring the lines of an abstract to be numbered is not mandatory, and the court in its discretion may tax the costs of the appeal to the appellant as a penalty for its violation rather than strike the abstract from the files.

WEAVER, J., dissenting.

*Appeal from Hardin District Court.*—HON. R. M. WRIGHT, Judge.

THURSDAY, NOVEMBER 20, 1913.

ACTION for libel. From ruling and judgment for costs on motion to strike amended and substituted petition, the plaintiff appeals.—*Reversed.*

*Charles A. Rogers,* and *Wade, Dutcher & Davis,* for appellant.

*Kelleher & O'Connor, C. M. Nagle, Williams & Williams,* and *Bryson & Bryson,* and *Aymer D. Davis,* and *Herbert A. Huff,* for appellee.

WITHROW, J.—I. Plaintiff's petition in two counts charged libel by the defendant. Defendant filed a motion to strike different parts of the two counts of the petition, which was sustained, to which ruling plaintiff excepted. The effect of the ruling on the motion was to strike from the files all of the essential statements in plaintiff's cause of action, the legal sufficiency of which was challenged by the motion. Both parties have in argument treated the motion as having worked all the purposes of a demurrer, and an examination of the record satisfies us that, although carrying a different name, it should be so treated, although we cannot approve the use of a motion to strike where a demurrer is the proper

means. Following the ruling on the motion to strike, the plaintiff filed her amended and substituted petition in three counts, which in no legal sense differs from the original petition, but was a repleading of that which had been previously stricken out. To this new pleading the defendant filed a demurrer, and also a motion to strike applied to the several counts, presenting the grounds urged in the original motion, and also the further ground as to each that it repleaded matter which had previously been stricken out. The motion to strike was made to apply to the objectionable paragraphs, and also the amended and substituted petition as a whole. There was no ruling upon defendant's demurrer, but the motion to strike was on September 21, 1911, sustained as to all grounds, and judgment was entered against plaintiff for costs. From this judgment and ruling plaintiff appeals; her notice stating that said appeal is taken ''from the judgment rendered in said action by said court on the 21st day of September, 1911, and from all orders and rulings made by the court in said action.''

II. It is claimed by the appellee that the ruling on the motion to the original petition, which determined that it stated no cause of action, is now controlling as to the law of the case, for after such ruling the plaintiff repleaded by way of an amended and substituted petition, setting out in substance all the material facts originally pleaded, and no more, which second pleading was on motion stricken from the files.

It is settled by many of our cases that, upon the filing of such new pleading, when it is but a repleading of matter previously held insufficient to state a cause of action, it is the right of the opposite party to have such pleading stricken from the files. *Epley v. Ely,* 68 Iowa, 70; *Town of Waukon v. Strouse,* 74 Iowa, 547; *Hoyt v. Beach,* 104 Iowa, 257.

1. PLEADINGS:
when may be
stricken.

That rule, however, is not determinative of the question presented, which is: Where a ruling on a demurrer to

a petition, or upon a motion serving the same purpose, holds that no cause of action has been stated, and an exception is taken to such ruling, does the plaintiff, by filing a repleading of the same facts, which on motion is stricken from the files, waive his right to have considered on appeal the correctness of the first ruling?

2. SAME: demurrer: repleading: waiver of objection.

There are in some of our previous cases expressions which tend to support the rule that upon appeal, in instances like the present one, the appellant has only the right to have considered the correctness of the ruling upon the motion to strike the second pleading; but we are of opinion that under a fair analysis of such decisions the rule as thus broadly claimed by appellant cannot be sustained. We therefore give attention not only to the cases cited by appellee, but also to others which may be taken as the basis of the rule.

In *Epley v. Ely,* 68 Iowa, 70, the plaintiff appealed from an order sustaining a motion to strike a second amended petition, on the grounds that it but restated matters previously held insufficient. It will be noted that the appeal was limited to a charge of error in such ruling. This court held the ruling to be correct, and that, if the lower court erred in sustaining the demurrer, the plaintiff should have secured an exception and sought to review the ruling by an appeal therefrom.

In *Town of Waukon v. Strouse,* 74 Iowa, 547, plaintiff's petition was, on demurrer, held insufficient. An amendment was filed, in two counts. On defendant's motion the first count was stricken as being a repleading of the facts held to be insufficient, and the second count of the amended petition was successfully assailed by demurrer. This court then held that so far as count 1 was involved it had been adjudicated, and as it presented no question for the court to determine it was proper to strike it from the files. It does not appear that any exception was taken to the ruling on the demurrer to the original petition, and on appeal the only question con-

sidered as to that count was the ruling on the motion to strike.

*Krause v. Lloyd,* 100 Iowa, 666, is authority for the well-settled and unchallenged rule that, when one amends his petition after an adverse ruling against it, he thereby waives the right to appeal from the order sustaining the demurrer. In that case the amendment to the petition was filed after demurrer to the original petition had been sustained, and on motion the amendment was stricken out as a repetition of matters previously pleaded, and judgment was entered against plaintiff for costs. On appeal the judgment of the lower court was reversed on the grounds that additional material matter had been pleaded in the amendment. The question here presented was not decided.

*Hoyt v. Beach,* 104 Iowa, 257, is authority only for the proposition that it is proper to strike an answer which is in substance a mere repetition of allegations which have been held insufficient on demurrer to a former answer in the same case. Appeal was taken from the ruling on the motion to strike, and the holding was as above stated.

*Frum v. Keeney,* 109 Iowa, 393, cited by counsel for appellee, treats only of rulings upon a demurrer and motion to strike filed by plaintiff attacking defendant's answer, both of which pleadings were overruled, and plaintiff thereupon filed a reply. It was held that in so doing he waived the right to complain of such rulings; but that under Code, section 3564, the plaintiff did not waive his right to attack the pleading on the grounds upon which his demurrer was founded, at any subsequent time in the progress of the case, as such right was expressly reserved to the litigant upon the overruling of a demurrer, but that the statute was without application where the demurrer had been sustained. The same rule is declared in *Geiser Mfg. Co. v. Krogman,* 111 Iowa, 503, and upon the question under consideration that case goes no farther.

In *McKee v. Ill. Cent. Ry. Co.,* 121 Iowa, 550, an original

petition had been held insufficient on demurrer, plaintiff saving no exception. Plaintiff took leave to amend, and thereafter filed successively three amended and substituted petitions, each of which was in turn stricken from the files as not differing in legal effect from the original petition. In his assignment of error the plaintiff in that case complained of nothing but the ruling on the last motion, although in argument the merits of the case were discussed as bearing upon the question whether a cause of action had been stated in the amended petition. It was held that the only question which could be considered on that appeal was the ruling of the court in striking the amended petition, and whether a different cause of action was stated in the amendment than that which originally had been plead.

In *Watkins v. Railway Co.*, 123 Iowa, 390, this court held that: "If, after a ruling on a demurrer, a party excepting to that ruling pleads over a mere repetition of matter theretofore pleaded, he does not, of course, waive the error in the ruling on the demurrer. By so doing he manifestly does not intend to waive the error in the ruling on the demurrer, if any there be. . . . Of course, if no exception is taken to the ruling on the demurrer, and the party pleads over, and the demurring party moves to strike it as a repetition, the only question then to be considered is the correctness of the ruling on the motion to strike." While the question in the *Watkins* case arose under a ruling holding an answer to be insufficient, it states a principle which is in harmony with our general rules of pleading and practice.

*Long v. Furnas*, 130 Iowa, 504, perhaps more strongly than any other of our cases tends to support the contention of the appellee. To the petition in that case a demurrer was filed, which was sustained. An amendment to the petition was on motion stricken from the files on the ground that it in no manner avoided the objections upon which the demurrer was sustained. The plaintiff refused to plead further, the action was dismissed, and appeal was taken. In the abstract

of the record it appears that an exception was taken to the ruling on the demurrer, and to subsequent rulings. In that case the rule was stated broadly, as claimed by appellee, that "the ruling on the demurrer became the law of the case without regard to the question of its correctness as an abstract proposition." This court is not willing to go further in support of the rule thus stated than to hold that upon ruling thus being made such becomes the law of the case in the forum where it is then being heard; but, if exception to the ruling be taken and duly preserved, the party by repleading and invoking the judgment of the trial court upon the new pleading, if it be in legal substance the same as the original petition, and where the second pleading has been stricken as a repleading, does not thereby waive his right to present on appeal the question of the correctness of the first ruling. This conclusion is in harmony with the spirit of our laws, and with our own rules of pleading, which are designed for the purpose of affording to litigants the opportunity to be heard upon appeal on every question, not waived, which enters into or bears upon their claimed rights. We have given to the question this extended consideration that previous decisions might be fully noted, and that where they have appeared to be in conflict with the rule now stated proper distinction might be preserved.

III. But there is yet another reason why the plaintiff has the right to be heard on this appeal on the merits of the case, independent of the conclusion reached in the preceding

3. SAME: estoppel to allege error.

paragraph of this opinion. In the trial below the appellee did not rely alone upon its motion to strike, as a repleading, the amended and substituted petition. While as we now hold, where exception was preserved to the original ruling, the right to an appeal from that ruling was not lost by a repleading of the same facts, the defendant, while asserting the rule as claimed by him on this appeal, did not rely alone upon such right. To the amended and substituted petition he inter-

posed a demurrer, and also a motion to strike various and vital parts of the several counts, all resting upon the claim of their insufficiency to state a cause of action and having the effect of a demurrer. He asked a ruling of the court upon matters of substance in the amended and substituted petition, at the same time joining with the several grounds of his motion his prayer that the pleading and its several counts be stricken from the files because of being a repleading. The trial court did not pass upon the demurrer, but did rule adversely to appellant upon every ground presented in the motion, including the general motion to strike the repleaded matter. It was within the power of the lower court to permit the amended petition to remain on file, even though it may have repleaded matters originally stricken out. *Martin v. Shannon,* 101 Iowa, 620. It was equally the right of the defendant to treat the new pleading as one calling for response, either by way of its legal sufficiency, or as calling for an issue of fact. Could the defendant while thus presenting his question of law under his motion, at the same time and as a part of the same motion in effect deny that issue of any character could be raised under the new pleading? Had the general motion to strike been filed, and subject to ruling upon it the demurrer and remaining grounds of the motion been filed as separate pleadings, we have no doubt that under our rules of practice there would have been no waiver by the defendant of his right to have the new pleading stricken from the files. But appellee did not so do. By his motion he "invoked the judgment of the court, and it was the duty of the court to give it, regardless of its former holdings." *Van Werden v. Assurance Society,* 99 Iowa, 623. We conclude that the position taken by appellee was such that this appeal must be considered upon the questions which were presented by him to and were decided by the trial court in its ruling upon the second motion, and which relate to the legal sufficiency of the pleading.

IV. The amended and substituted petition in count 1

charges libel as follows: That plaintiff and her brother are the owners of large property interests in Hardin county, where plaintiff resides; their ownership being as heirs at law and legatees of their Wisner ancestors. That such property is owned and managed by her brother and herself, and is commonly known in Hardin and adjoining counties as the Wisner Estate, and that by reason of such the public came to know the property of plaintiff and the business conducted by her as the Wisner Estate. That the defendant is the publisher of the Hardin County Citizen, published at Iowa Falls in Hardin county; such newspaper being of general circulation in Hardin and adjoining counties. That on the 28th day of April, 1911, the defendant printed and published in said newspaper a certain false, slanderous, libelous and defamatory article of and concerning plaintiff, in language as follows:

4. LIBEL: construction of article: pleadings: innuendo: sufficiency.

Judging from the Eldora papers and the various nasty rumors that permeate out over the county, for drinking and immorality Eldora leads the procession of all the towns in the county. Every week a number of drunks are hauled into police court for fighting and carousing, and doubtless there are many that are not in police court. And the Wisner Estate, while helping in a financial way, has carried a trail of destruction along its path. By this it must not be inferred that a big majority of Eldora people are not upright, conscientious, righteous citizens. They are, but they seem powerless to combat the currents of this huge maelstrom of destruction.

Plaintiff avers that the term "Wisner Estate" used in said article referred to her, and was so understood by the readers thereof, for the reason that she was one of the owners of said estate, and that this fact was commonly and generally known, and was also known by defendant. Plaintiff charges a specific intent by defendant, in the publication of said article, to cause it to be believed by the readers thereof that plaintiff was responsible for the criticised immoral conditions.

Plaintiff claims general damages for injury to her good name and reputation, and pleads that she has by such publication been subjected to deep humiliation and mental suffering. Count 2 incorporates count 1 by reference, but pleads individual instead of joint ownership of the Wisner Estate. Count 3 charges that subsequent to the publication charged in counts 1 and 2, and soon after notice of suit was served upon defendant, in his said newspaper he published and caused to be circulated the following:

Sues for $50,000.00. Just why should a millionaire estate sue an insignificant country editor for the paltry sum of $50,-000.00. . . . We were discussing social conditions at Eldora, compared with other towns, as gathered from the newspapers and elsewhere, matters of public concern, with good motives and justifiable purposes. For having done this we are made defendant in these suits. This paper will continue in the future, as in the past, the foe of wrong and evil-doing. It will persistently stand for purity and uprightness in society, politics and home life, be it high or low. It will not be silenced by suits or threats of suits.

She avers that such publication was made by the defendant for the purpose of reiterating the false and defamatory statements theretofore made by him, and with the malicious intent to further provoke and humiliate this plaintiff, and that the words "millionaire estate" used in said article referred to plaintiff, and was so generally understood; and it was published for the purpose of aggravating the injury and damage to plaintiff, and for which she asks additional damages. The motion of the defendant, the sustaining of which as to all grounds is presented as error, while striking separately at the several clauses of the different counts, in its ultimate result is directed to the claim that the article referred to is not libelous nor defamatory; that the same shows plainly on its face what it referred to, and no particular person was intended; and also that the pleading as to what constitutes the "Wisner Estate," its owners or owner, and

the common understanding as to such, are not proper matters for inducement.

Our statute defines libel as a malicious defamation of a person made public by printing or writing tending to provoke him to wrath or expose him to public hatred, contempt, or ridicule, or to deprive him of the benefits of public confidence and social intercourse. Code, section 5086. This definition applies as well to civil as to criminal libel, and its application is considered in *Morse v. Printing Co.*, 124 Iowa, 707, and cases there cited. If therefore the language of the publication now complained of is such that it carries with it a meaning which when applied to plaintiff tends to expose her to public hatred or contempt, or to deprive her of the benefits of public confidence and social privileges, and maliciously defames her and is untrue, it comes within the rule stated. This assumes for the moment that its application to plaintiff is sufficiently pleaded.

A reading of the alleged libelous article results in but one conclusion as to its statement of moral conditions in Eldora; that in immorality it led all the towns in the county, and that every week the police court was called upon to consider the cases of persons charged with crime or misdemeanors resulting from drunkenness. Under the definition of libel and under our decisions, it is without question that if any person was maliciously charged with producing or contributing to such conditions, and such charge were untrue, an action for libel would lie. The particular language which, under the averment of the petition, is alleged to be a charge of such responsibility on the part of the plaintiff, "and the Wisner Estate, while helping in a financial way, has caused a trail of destruction long its path," while not, if read alone, coming within the rule, must be considered in connection with the remainder of the article of which it is a part.

This is the true rule of construction. The entire article pictures a condition which, if true, is deplorable and wrong. If the particular language referring to the Wisner Estate

was not intended in some manner to charge it in part with responsibility for such a condition, it was entirely without relevancy to anything which preceded or followed it. The language immediately following the quoted sentence has apparent relation to it: "By this it must not be inferred that a big majority of Eldora citizens are not upright, conscien-. tious, righteous citizens. They are, but they seem powerless. to combat the currents of this huge maelstrom of destruction." Here appears a purpose to relieve the community at large from responsibility for existing conditions, and to center it, in part, upon "this huge maelstrom of destruction."

An approved definition of the word "maelstrom" is "any destructive or wide-reaching noxious influence."

There is in the published article the suggestion of no name of person or thing to which such words could apply save that of the Wisner Estate, and we conclude that it is of such nature as to sustain a pleading of libel, unless it be, as charged by defendant, that it named no particular person, and that plaintiff therefore cannot take unto herself the alleged libelous matter as an injury to her personal reputation.

V. It is averred in the petition that "the Wisner Estate" had, in the community where the alleged libel was published, a personal meaning, and although it is a term as impersonal as the name of a corporation, yet in Eldora and Hardin and surrounding counties such expression was generally used and understood as meaning the owners of the estate, who are plaintiff and her brother, or the plaintiff alone, as pleaded in the second count of her petition. One of the grounds of defendant's motion to strike is that the part of the petition pleading such facts is improper as inducement or innuendo.

5. SAME: innuendo.

An innuendo is not an averment, but is only a matter of explanation. It cannot extend the sense of the expressions in the alleged libel beyond their own meaning. *Wallace v. Homestead Co.*, 117 Iowa, 348.

But where the written words are such as to be libelous in character, but are without definite application to any particular person, and yet use a term or terms of description of a general nature which to the reader of the article carry a certain meaning as to the person against whom the accusation is made, it is competent by way of pleading and proof to show the intention of the writer and the understanding of those among whom the alleged libel is published. ''While defamatory words, to be actionable, must refer to some ascertained or ascertainable person, and that person must be plaintiff, yet it is sufficient, even though plaintiff be not named, if the alleged libel contains matters of description or other references therein, or the extraneous facts and circumstances are such as to show that plaintiff was intended to be the object of the alleged libel, and was so understood by others.'' 25 Cyc. 362, and cases cited: *Fenstermaker v. Tribune Pub. Co.*, 12 Utah, 439 (43 Pac. 112, 13 Utah, 532, 45 Pac. 1097, 35 L. R. A. 611).

VI. It is true that where the words of application designate a class, and are so general that no individual damage can be presumed, no private suit can be maintained. The cases of *Comes v. Cruse*, 85 Ark. 79 (107 S. W. 185, 14 Ann. Cas. 327), and *Harris v. Santa Fé Townsite Co.* (Tex. Civ. App.) 125 S. W. 77, cited by appellee, are statements of this rule, but are in no sense in conflict with the authorities which establish the principle we have noted. If the words which make application of the alleged libel, even though general, use the name of a class, a thing, a corporation, an estate, or any entity, either personal or impersonal, which to the user and the reader has a direct personal meaning, and is so intended and so understood, the article if libelous is actionable by the person so intended and understood to be charged. The effect of plaintiff's pleading by way of innuendo was to bring the case within this rule, and it should have been permitted to stand.

6. SAME.

Under the authorities, if the charge be against a

class, and is or may be made of definite application, any one of that class may maintain an action upon showing that the words apply especially to him. 12 Utah, 439 (43 Pac. 112), 13 Utah, 532 (45 Pac. 1097, 35 L. R. A. 611), above cited. *Maybee v. Fisk*, 42 Barb. (N. Y.) 326; *Gidney v. Blake*, 11 Johns. (N. Y.) 54. It therefore matters not if the Wisner Estate were owned entirely by plaintiff, or jointly by herself and brother, if, as charged, the published article was intended to and was understood by the reader as having direct application to plaintiff either as alone or jointly causing the criticised conditions.

VII. The publication charged in count 3 of the amended and substituted petition, while referring to the fact of suit having been brought against the defendant upon the original article, does not in terms reiterate the charge previously made. It is in a general way expressing the future policy of the writer in conducting his newspaper, and we think is not by fair construction susceptible of being termed an affirmance of, apology for, or denial of, the previous article. Separated from the first article, it is wholly wanting in directness, both as to charge and its application. Read it in the light of what had previously been published, it yet fails to contain the necessary elements of a libel. There was no error in striking count 3 from the files.

VIII. Appellee, upon the submission of this cause, moved to strike appellant's abstract from the files because it failed to number the lines, as required by rule 50, regulating the practice in this court. The object of that rule is to render less laborious the consideration of submitted causes by providing means of reference to the abstract, and which, if followed, necessarily lightens the duties of the appellate court, and in no way operates against a thorough examination of the case. The provision for striking the faulty abstract from the files is not mandatory, but one in which a fair discretion may be exercised. Such delinquency cannot pass unnoticed, for the

7. APPEAL: defective abstract: penalty.

.rule is one intended to be followed, with penalty for failure. We are satisfied to hold in the present case that as such penalty all costs created by appellant on this appeal shall be taxed to her.

Because of the errors noted in rulings on defendant's motion to strike, the judgment of the trial court is—*Reversed.*

LADD, DEEMER, GAYNOR, and PRESTON, JJ., concurring. EVANS, J., took no part.

WEAVER, C. J. dissenting.—With the holding of the majority as to the effect of plaintiff's act in repleading the substance of a petition to which a demurrer or motion to strike has been sustained I am not disposed to take issue. I am, however, wholly unable to concur in the more vital proposition that the petition either in its original or amended form states a cause of action. The majority seems to agree with this view so far as it relates to the publication complained of in the third count of the petition, and I therefore limit my examination of the case to the libel, so called, stated in the first count.

It is unnecessary to go into any discussion of the definition of libel. It is not only settled by a long line of decisions, but by statute (Code, section 5086), as being the malicious defamation of a person made public by any printing, writing, sign, picture, representation, or effigy tending to provoke him to wrath or expose him to public hatred, contempt, or ridicule, or to deprive him of the benefits of public confidence or social intercourse. If the plaintiff charges defendant with using libelous language, concerning him, and the language so indicated is such as upon its face and without recitation of extrinsic circumstances brings it within the scope of the foregoing definition, it is actionable *per se,* and special damages need neither be alleged nor proved to sustain a recovery. But where the language charged is not manifestly libelous or is not expressly applied to the

plaintiff, it is rendered actionable only by proof of extrinsic facts which show that it was used with reference to the plaintiff and intended in a defamatory sense and was so understood by the persons to whom it was published. Formerly it was strictly necessary that these extrinsic matters, ordinarily spoken of as the inducement or colloquium and necessary to show the appreciation and defamatory meaning of the words charged, should be pleaded, and that the statement of the alleged libelous language should be followed by what was technically termed an innuendo setting out the alleged intended meaning of the language charged to have been used. Under our statute it is not now necessary to plead extrinsic facts relied upon to show the use of language in a defamatory sense or its application to the plaintiff, but it is enough to state the alleged defamatory sense, and that the same was written or published of and concerning the plaintiff. Code, section 3592. In other words, the statute seems to dispense with the necessity of alleging either inducement or colloquium, but makes a proper innuendo still necessary in averring libel in the use of language not clearly actionable *per se*. *Quinn v. Ins. Co.*, 116 Iowa, 526.

The plaintiff in the present action has seen fit to follow the ancient and superseded method of pleading, and unnecessarily incumbered her petition with many allegations of extrinsic matters evidently intended to serve as an inducement or colloquium to indicate the alleged defamatory sense in which defendant's language was employed and made the same applicable to herself, though much if not all the matters and things so alleged are neither relevant nor competent for that purpose under any system of pleading. These unnecessary allegations add nothing to the force or effect of the petition, and we may proceed to a consideration of the language of the alleged libel as interpreted by the plaintiff's innuendo and see if upon any fair or reasonable interpretation it is capable of the offensive meaning which is sought to be placed upon it.

It is proper first to consider the office of the innuendo and inquire to what extent, if any, it may enlarge, diminish, or qualify the effect of the words charged to be libelous. If anything in the law of libel may be considered settled, it is that language which is not upon its face defamatory of the plaintiff cannot be made so by an innuendo which seeks to enlarge, extend, or change the natural sense or meaning of the statements complained of. *Wallace v. Homestead,* 117 Iowa, 363; *Quinn v. Ins. Co.,* 116 Iowa, 526; *Sheibley v. Ashton,* 130 Iowa, 198. Where, however, the language used is of an ambiguous character or may fairly be given one of two or more meanings, one of which is defamatory, it is allowable for the plaintiff to so allege it and offer in evidence facts and circumstances tending to show that this was the intended sense in which it was employed or the sense in which it was understood by those to whom it was published. *Craver v. Norton,* 114 Iowa, 48. Whether the language is in fact capable of the offensive meaning attributed to it is always a question of law for the court.

It has been well said that words charged to be libelous fall into one of three classes: (1) Those which cannot by any reasonable possibility bear a defamatory meaning; (2) those which are reasonably susceptible of a defamatory meaning as well as an innocent one; and (3) those which are clearly defamatory upon their face. *Pratt v. Pioneer Co.,* 30 Minn. 41 (14 N. W. 62). If the particular language charged falls within the first of these classes, the court must so hold as a matter of law and the action must fail. In my judgment this case calls for an application of that rule. The allegation that the words "Wisner Estate" do not mean the Wisner Estate in any of its meanings as known to every intelligent user of the English language, but refers rather to the young girl just emerging from guardianship on whom a share of such estate has descended by operation of law, borders upon the absurd. Suppose some individual should bring suit upon the same alleged libel, alleging that he is a citizen of Eldora

and by reason of his great wealth and prominence he has become so identified with that city that when its good name is defamed the people of the community understand it as applying to him personally and upon such showing he demands a recovery of damages. Such a pleading would be instantly condemned as insufficient, yet, if the rule which we apply in this case is to be upheld, it would be difficult to give any sound reason for holding such an allegation bad. In construing an alleged libel in *Wallace v. Homestead,* 117 Iowa, 363, we said: "An innuendo cannot extend the sense of the expressions in the alleged libel beyond their own meaning. Where the words used are ambiguous or admit of different applications, an innuendo may confine or direct them but cannot extend the intendment of an expression beyond the customary meaning. The words themselves must be taken in that sense in which they would be naturally understood by the persons who heard and read them. What then is the plain and popular sense of the words used, and what was the imputation meant to be conveyed?" See, also, *Weeks v. News,* 117 Md. 126 (83 Atl. 162). While the word estate is one of varied meaning, the books will be searched in vain for instances in which it is used to designate an individual or person. It is known to common and universal usage as having reference to property or property rights. In common parlance its most familiar application is to the property or assets of which a person dies seised or possessed. To say that the meaning of the words "Wisner Estate" may by innuendo be so enlarged or extended as to include not only the estate but also the individual owners thereof is to overthrow the rule to which we have hitherto given consistent adherence and introduce a new doctrine into the law of libel.

Again, it will be observed that the article charged to be libelous includes in its criticism the city of Eldora alone and the conditions said to be existing there and not elsewhere. The plaintiff avers as the ground of her complaint that the

effect of the defamatory article was to impute to her some use of her property by which the alleged demoralization in Eldora was promoted or aggravated, yet she nowhere alleges that she owns, possesses, or controls a dollar's worth of property in that city.

And again it should not be overlooked that the published article of which complaint is made is clearly and unquestionably not libelous *per se,* and, if it be actionable at all, it is because of facts not appearing upon the face of the writing, proof of which will justify a finding that the language was used in a defamatory sense or is fairly capable of such construction and was so understood. In such case it is a universal rule that both allegation and proof of special damages are essential to a right of recovery. Stated otherwise, a petition, which complains of defamation by means of a printed article which is not libelous upon its face and fails to allege any special damage because of its publication, fails to state a cause of action. *Achorn v. Piper,* 66 Iowa, 694; *Pollard v. Lyon,* 91 U. S. 225 (23 L. Ed. 308); *Railroad Co. v. Delaney,* 102 Tenn. 289 (52 S. W. 151, 45 L. R. A. 600); *Newman v. Stein,* 75 Mich. 402 (42 N. W. 956, 13 Am. St. Rep. 447); *Bank v. Bowdre,* 92 Tenn. 723 (23 S. W. 131); *Cook v. Cook,* 100 Mass. 194; *Crashley v. Press,* 179 N. Y. 27 (71 N. E. 258, 1 Ann. Cas. 196); *Maglio v. Herald,* 93 App. Div. 546 (87 N. Y. Supp. 927); *Strauss v. Meyer,* 48 Ill. 385; *Sheibley v. Ashton,* 130 Iowa, 198; 5 Ency. Pl. & Pr. 766.

In this case there is no allegation of special damage and the petition will not support a recovery. Under a general allegation that plaintiff has been injured in reputation and standing or has been exposed to public scorn or loss of public confidence, special damages can neither be proved nor recovered. See cases above cited. It follows, I think, of necessity, that no cause of action was stated in the petition, and there was no reversible error in the ruling appealed from. While the court should not hesitate to sustain a right of action where a plaintiff has been wantonly and unjustifiably defamed

in public print, there should be no strained effort to construe language in a defamatory sense which is not plainly or fairly derivable from the words employed. In my judgment the district court was clearly right in holding the petition fatally defective, and its judgment should be affirmed.